ANDRUS ET AL.
vs.
CHRETIEN.

**ANDRUS ET AL. vs. CHRETIEN.**

APPEAL FROM THE COURT OF THE FIFTH JUDICIAL DISTRICT, THE JUDGE
THEREOF PRESIDING.

The purchasers of a debt or claim at sheriff's sale, stand in the same rela-
tion to the person who owes it, as the creditor of the latter would, or did
before the sale; and whatever defence would avail the original debtor
against his creditor, is equally valid against his vendees or purchasers.

Where a person assigns and transfers a surety debt for a consideration
expressed therein, subrogating his assignee to all his rights, and authori-
sing him to recover the debt by all legal means : Held, that a discharge
given by the assignee to the original debtor, in pursuance of the assign-
ment, was valid against the assignor and his vendees, even when the
debt was not novated by the assignment, and never paid to the assignee.

Parole evidence is *inadmissible* to prove a verbal agreement to cancel a sale
of slaves, or to establish or destroy title to slaves.

Parole evidence is *admissible* to prove collateral facts, such as that the seller
took back certain slaves from the purchaser, and had them in possession
with the consent of the latter, in consequence of redhibitory defects, and
to avoid litigation.

This case has been once before in this court. It was deci-
ded against the plaintiffs on the ground that they had
purchased a debt due by a *surety* which could not be legally
sold. See *the facts of the case reported in 3d La. Reports*, 48.

On the return of the case, the debt was re-sold and the
suit commenced *de novo*. The debt was sold and purchased
by the plaintiffs under the following description, as advertised
by the sheriff. "All the right, title, interest and demand
which John Andrus (the defendant in said suit) has, in and
to a certain debt, contracted by Stephen Brown, as principal,
and Hypolite Chretien as his security, with, and to said John
Andrus, and the heirs of Charlotte Hanchette, his deceased
wife at the sale of the estate, in community between the
aforesaid Andrus and the said heirs, &c., at which sale,

Stephen Brown became the purchaser of lot No. 23, in the *procès verbal* of said sale, consisting of four slaves, for the sum of three thousand four hundred and sixty dollars with interest, &c., and a mortgage on the property sold to secure the purchase money, for the payment of which aforesaid sum, &c., to the said John Andrus, and the heirs aforesaid, the aforesaid Hypolite Chretien became the security of the aforesaid Stephen Brown, and with him signed the *procès verbal* of said sale." The sale was made on the 7th January, 1832, and the plaintiffs, in the execution against John Andrus became the purchasers, for the sum of sixty-seven dollars, being two thirds of the appraised value. The purchasers received the sheriff's deed according to the terms of sale. They then instituted this suit against the defendant, as the surety of the debt, in May, 1832, and pray judgment against him for amount thereof with interest. ·

The defendant pleaded a general denial; that the debt sold, purports to be owing by a person who lived and died in the parish of St. Martin, which could not be seized and sold by the sheriff of St. Landry; that the succession of Stephen Brown the principal debtor, is not represented, the curator being *functus officio*, and was so long before the seizure and sale of this debt; that John Andrus took back the negroes purchased by Brown, in his life-time, and cancelled the sale and obligation which the defendant signed as surety; and that no inventory was ever made of the slaves, as making part of Brown's succession, after his death; that afterwards John Andrus assigned this debt to Luke Lesassier, and subrogated the latter to all his rights in the same; and who, to make a legal title to the slaves, obtained a judgment by consent with the curator of Brown's succession, had the negroes seized and sold, and purchased them in, in full satisfaction of the original debt; that Lesassier as the assignee of Andrus, gave him (defendant) a full acquittance and discharge from all liability as the surety of Brown, on account of said debt. He finally pleads the prescription of three, five and ten years, and charges fraud in Andrus and Lesassier, and that the plaintiffs purchased said claim with full notice of all these facts and circumstan-

WESTERN DIST.
September, 1834.

ANDRUS ET AL.
vs.
CHRETIEN.

ces, and at their own risk; and that they have no rights that Andrus did not possess, who had transferred and cancelled the debt, consequently they cannot recover.

The evidence showed, that on the 29th January, 1820, all the estate in community between John Andrus, and the heirs of his deceased wife, was sold at probate sale, and one Stephen Brown purchased lot No. 23, consisting of four slaves, for three thousand four hundred and sixty dollars bearing interest, with H. Chretien his surety; the slaves remaining mortgaged until payment. Brown took the negroes to the parish of St. Martin. And shortly after, finding some of them afflicted with redhibitory defects, (as Brownson, defendant's witness states) intended to bring an action to recind the sale, and employed witness for that purpose. That Lesassier who represented Andrus, was to examine the slaves, and if found defective, the sale was to be annulled and cancelled. On examination it was agreed between the parties, that the sale should be cancelled; and a few days afterwards the slaves were sent to Andrus, near Opelousas, but before any thing was done, Brown destroyed himself, which prevented any act being passed, cancelling the sale. The negroes remained in possession of Andrus, until suit was brought against Brown's succession in the Probate Court.

Things remained in this situation, when on the 7th May, 1825, John Andrus, to whom the debt was due, transferred it to Luke Lesassier, by notarial act, in the following terms: "That H. Chretien, became surety for Brown, in the purchase aforesaid, and signed the *procés verbal* of sale, which sum of money (three thousand four hundred and sixty dollars) has never been paid, &c. Whereas the said John Andrus is justly indebted to L. Lesassier, in the sum of one thousand two hundred and fifty dollars, with interest, &c. Now, therefore, I the said John Andrus, do assign, transfer and set over to the said L. L., all the debt of three thousand four hundred and sixty dollars, subrogating him to all my rights therein, as well those resulting from the mortgage aforesaid, hereby authorising the said L. L., by virtue of this assignment and transfer, to proceed and recover the said sum of

money from the said Brown, his heirs or executors, or his surety,
H. Chretien, by all legal means; as also to proceed by hypo-
thecary action against said slaves, so purchased, as aforesaid;
and the said L. L., accepting this assignment and transfer,
doth promise to return and pay over to said John Andrus,
all sums of money which may come into his hands, in virtue
of this transfer, over and above the sum of one thousand
two hundred and fifty dollars, as aforesaid." Signed before
a notary and two witnesses, by Andrus and Lesassier.

Brown having died, John Brownson was appointed curator
of his vacant succession, the 20th March, 1824. In May,
1827, Lesassier instituted suit in the Probate Court for the
parish of St. Martin, against the curator of Brown's succes-
sion for the amount of said debt. Brownson, as curator,
pleaded the general issue to the action.

Brownson, in his testimony, swears, that he then stated to
Lesassier, that the suit could not go on without the matters of
taking back the negroes, by Andrus, on account of redhibitory
defects, were set up in defence. It was then agreed, verbally,
between them, that judgment should go against Brown's
estate, simply in order to obtain a title to the negroes, so that
he might get the proceeds of any sale he might make of them,
and the judgment was rendered for this purpose. That on
the 15th May, 1827, he took an agreement to this effect, &c.
On the 28th May, 1827, Lesassier had judgment for the sum
of three thousand four hundred and sixty dollars and interest,
ordering that the negroes purchased by Brown, be seized and
sold, to satisfy the same. In June following, the negroes
were sold under an execution, issuing on said judgment, to
the parish of St. Landry, and Lesassier became the purchaser
for one thousand and eighty dollars.

After instituting the above suit, Lesassier gave Brownson
the following written instrument, alluded to in the testimony
of the latter:

"Whereas suit has been instituted by me, against J.
Brownson, as curator of the succession of Stephen Brown, for
the purpose of obtaining a judgment which shall authorise
the seizure and sale of certain negroes, bought by the said
41

WESTERN DIST.
September, 1834.
────────────
ANDRUS ET LL.
vs.
CHRETIEN.

Stephen Brown in his life-time, of a certain John Andrus, which sale was subsequently cancelled by a verbal agreement between the said Brown and the said Andrus: Now, therefor, I engage that said judgment, if obtained against the said Brownson as such curator, shall never be made use of by me, or by any other person representing my rights, as the foundation of any claim, either for principal, interest.or costs, against the said Brown's succession, it being my design and intention to make use of it, solely to authorise a further proceeding against the property, the sale of which to the said Brown was cancelled as before stated ; and I further engage to pay all costs," &c.

Opelousas, 15th May, 1827.                    " L. Lesassier."

On the 18th October, 1827, following the above, Lesassier gave Chretien, the surety of Brown, a complete acquittance and .discharge from all responsibility, on account of said surety debt, which he signed as assignee of John Andrus.

The plaintiffs obtained judgment in the Probate Court, for the parish of St. Landry, on the 29th March, 1828, against their father John Andrus, for their portion of their mother's estate, amounting to three thousand eight hundred and forty-three dollars forty-eight cents, with interest, and a legal mortgage on all the real property and slaves of said John Andrus, owned and possessed by him on the 27th January, 1820, until paid.

The debt in question was seized and sold under an execution, issuing on this judgment, in the parish of St. Landry, the residence of John Andrus the defendant in execution, and purchased by the plaintiffs.

The parole evidence taken to prove the cancelment of the sale to Brown, and the return of the slaves to Andrus, with the proceedings had in relation thereto, was received subject to all legal objections. It was objected to by the plaintiff's counsel, as inadmissible.

After hearing the evidence of the case, the district judge being of opinion the defendant was not liable, rendered judgment in his favor. The plaintiffs appealed.

*Garland*, for the plaintiffs.

1. The testimony of Mr. Brownson is inadmissible, as he was, at the time of giving it, the curator of Brown's estate; also, because it goes to prove a parole agreement to rescind a sale of slaves. The testimony of Moore is also inadmissible, being liable to the last objection to Brownson's evidence. The same objection applies to all that portion of Mr. Simon's testimony, relative to the rescission of the sale. 3 *Martin*, 486. 4 *Martin*, *N*. *S*. 212.

2. All the right, title or interest, which John Andrus had in or to the claim against Brown's estate, or against the defendant as the surety of Brown, is now vested in the plaintiffs, by virtue of the sheriff's sale, made under the execution issuing out of the Probate Court of St. Landry, in the suit of the present plaintiffs, against John Andrus. And unless the defendant can show he is discharged, the plaintiffs must recover.

3. The first objection cannot be sustained. The execution under which plaintiffs purchased, was against John Andrus. He resided in St. Landry, and the evidence of the debt was of record in the office of the judge of that parish. It would not have been legal to have sent the execution to the parish of St. Martin, where Brown's succession was opened. *Code of Practice, art.* 642.

4. The sale is not void in consequence of the service of the notice of seizure. In the first place it was not necessary to have given any notice of the seizure, to Brown's curator, or to Chretien, but if it was, it has been done legally. A notice was served on Chretien, by the sheriff of St. Landry, and one on Brownson, as Brown's curator, by the sheriff of St. Martin, and defendant is now estopped from saying Brownson was not the curator, as he has given in evidence two documents, in which the character of curator is taken, both of which bear date subsequent to the seizure.

5. No agreement to rescind a contract of sale of slaves can be proven by parole evidence, though accompanied by possession. But if any such contract ever was made, which is not admitted, it appears from the evidence, it was the inten-

WESTERN DIST. tion of the parties to reduce it to writing, which was never
September, 1834. done ; therefore, either party had a right to retract, and John
ANDRUS ET AL. Andrus did retract, as is conclusively established.   1 *Martin*,
vs.
CHRETIEN.   *N. S.* 420, *and the authorities there cited.*   3 *Martin*, 486, *and*
4 *Martin, N. S.* 212.

6. There is no evidence of any fraud practised by John
Andrus or Lesassier, on Brownson, as Brown's curator.   But
if there was, it would not avail the defendant any thing.   He
alleges the effect of the fraud, was to prevent Brown's cura-
tor from pleading the redhibitory defects of the slaves in the
suit Lesassier instituted against him.   Suppose for a moment
it was so, in what way can it benefit the defendant ?   No
fraud has been practised on him, and he, as Brown's surety,
has a right to set up all the exceptions and defences that
Brown or his curator might have pleaded, yet he has not in
his answer said one word about the redhibitory defects of the
slaves.   Is not the conclusion therefore irresistible, that no
such defects existed, and that all the allegations about fraud,
were thrown into the answer, for the purpose of getting parole
evidence admitted of an agreement to rescind the sale ?

7. The judgment of Lesassier against Brown's curator, was
not rendered by consent.   The record of that suit shows
directly the reverse.   An answer is filed, denying all the alle-
gations in the petition, and the judgment states, that it was
rendered upon full proof of the allegations contained in the
petition, and after hearing the parties.

8. The instrument by which this claim was transferred, by
Andrus to Lesassier, is not an *act of transfer*, but a *procuration*.
If it be a transfer, it is only for the portion that was due to
Lesassier by Andrus, viz : the sum of one thousand two hun-
dred and fifty dollars. Lesassier was in fact nothing more than
the mandatory of Andrus, to collect this debt and pay over
the balance, after deducting what was due to him by the
latter.

9. The mandatory or mere attorney in fact, has no authori-
ty to release a debt, or make a donation of a claim or debt
of his principal without consideration, consequently the
releases and acquittances of Lesassier, executed to the defend-

WESTERN DIST.
September, 1834.

ANDRUS ET AL.
vs.
CHRETIEN.

ant and the curator of Brown, are null and void. *Pothier, Contrat du Mandat, vol.* 6, *p.* 87, §2. *Ib. p.* 103, *ch.* 2, *No.* 53.

10. The act under which Lesassier transacted this business, has all the forms and requisites of a procuration. *La. Code,* 2955, 2966.

11. The attorney in fact or mandatory, has the right to retain, out of the sum in his hands, all sums necessary to cover his costs and expenses, and even to offset a debt owing to him by his principal. This was precisely the case of Lesassier and Andrus. *La. Code,* 2992.

12. But even if this be a transfer of the debt from Andrus to Lesassier, it is only in trust for the portion over the sum due to Lesassier, and the trustee cannot release the debtor without full consideration. In any view we take of the case, the plaintiffs must recover at least the surplus of this claim, beyond the amount of Lesassier's debt on Andrus.

*Simon and Brownson,* for the defendant.

1. The sale of this debt was illegal. The principal debt existed against Brown's estate, in the parish of St. Martin, but the execution issued, and the sale took place in the parish of St. Landry. *Code of Practice, art.* 642.

2. The seizure and sale are void, because Brown's estate was not represented. The curator was *functus officio,* and had never been re-appointed.

3. The act of transfer from Andrus to Lesassier, was sufficient to invest the latter with the complete ownership of this debt; and authorised him to dispose of it as he thought proper. *Pothier, Vente, No.* 550, 558, 574–5–6–7.

4. Being the legal owner of this debt, Lesassier had the right to give a release of it. He has done so to the defendant Chretien, who is the surety, and now completely discharged from his suretyship.

5. The object of this transfer was for the particular purpose of giving effect to a previous verbal agreement, relative to the cancelling of the sale of certain slaves to Brown, which had been taken back. Lesassier effected this object by obtaining a judgment against Brown's succession, by consent,

and having the slaves sold under it to perfect the title to them, by divesting Brown's estate of it. Lesassier purchased the slaves, in this way, for the whole debt. In doing this, he acted in accordance with his mandate from Andrus. This *mandate* was of the fullest extent, and contained the most ample powers. *Pothier Mandat, No.* 144–5–6, &c.

*Bullard J.*, delivered the opinion of the court.

The plaintiffs sue as owners, by purchase at sheriff's sale, of a debt, alleged to be due by the estate of Stephen Brown, and the defendant, his surety. They show that Brown purchased, at the public sale of the estate of their mother, in community with their father, a certain lot of slaves, and that Chretien became his surety for the payment of the price ; that having obtained a judgment against their father, as tutor, they levied their execution on that debt, and it was adjudicated to them.

The defendant pleads, among other exceptions, not now necessary to notice, that at the time of the seizure of the debt by the plaintiffs, it was not the property of John Andrus, their debtor, but had been assigned and transferred to Luke Lesassier, who had given, both to the defendant and the estate of Stephen Brown, a full discharge, to the knowledge of the plaintiffs themselves ; that soon after the sale of the slaves to Brown, and previously to the assignment of the debt to Lesassier, John Andrus had taken back the slaves, under a verbal agreement to cancel the sale, on account of certain redhibitory defects ; and that he retained possession of them, until they were sold by the sheriff of St. Landry, to satisfy a judgment, recovered by Lesassier in his own name, as assignee, against the vacant estate of Brown ; that the judgment so recovered, was rendered by consent, upon a written agreement of Lesassier, with the curator of the estate, that the same should be used, for the sole purpose of divesting the estate of the legal title in the slaves, in pursuance of the verbal agreement, although the estate had a good defence to the action ; and that the slaves were sold and bought in by Lesassier, in satisfaction of the judgment,

thereby carrying into effect the original agreement, all which was done with the knowledge and consent of John Andrus. The respondent further alleges, that all these proceedings were carried on, without any notice to him, as surety of Brown, and that thereby it is no longer in the power of John Andrus, to subrogate *him* in his rights and actions against Brown. He further alleges, that afterwards in 1827, Lesassier, in pursuance of the same agreement, gave him a full and complete discharge. He further says, that an attempt, now to make him liable for this debt, is owing to the fraudulent conduct of Lesassier and John Andrus; that Brown, and afterwards John Brownson, Esq., the curator of his estate, acted in good faith, and that all the transactions took place, in consequence of the fraudulent representations of Andrus and Lesassier, while fraud was used to deprive the estate of Brown of the legal right, to have the sale cancelled, to obtain a fraudulent title to the slaves, and of compelling the purchaser afterwards to pay the price. He further alleges, that the plaintiffs, when they purchased the claim, had due notice of all the equitable defences in his favor.

It may be assumed as undeniable, that the plaintiffs have no greater rights than John Andrus, and that whatever defence would avail the defendant against him, is equally valid, against those who stand in his rights. We will, therefore, consider the defence, as if John Andrus was himself the plaintiff in this action.

The first question which presents itself, is the validity of the final discharge, given by Lesassier to the defendant, and that depends on the question, whether by the assignment from Andrus to him, the latter was the absolute owner of the debt. The assignment recites the purchase of the slaves by Brown, and the suretyship of Chretien, as well as the terms and conditions of the sale. It then goes on to say, that John Andrus, being indebted to L. Lesassier, in the sum of twelve hundred and fifty dollars, with interest, at the rate of ten per cent., from that date, "now I, the said John Andrus, do assign, transfer and set

The purchasers of a debt or claim at sheriff's sale, stand in the same relation to the person who owes it, as the creditor of the latter would, or did before the sale; and whatever defence would avail the original debtor against his creditor is equally valid against his vendees or purchasers.

over, to the said L. Lesassier, all the debt of three thousand four hundred and sixty dollars, as aforesaid, subrogating him in all my rights therein, as well as those resulting from the mortgage aforesaid, hereby authorising the said Luke, by virtue of this assignment and transfer, to proceed and recover the said sum of money, by all legal means," &c. "and the said L. Lesassier, accepting this assignment and transfer, doth promise to return and pay over to said J. Andrus, all sums of money, which may come into his hands, in virtue of this transfer, over and above the sum of twelve hundred and fifty dollars, with the interest which may thereon accrue, as aforesaid."

Where a person assigns and transfers a surety debt for a consideration expressed therein, subrogating his assignee to all his rights, and authorising him to recover the debt by all legal means: *Held,* that a discharge given by the assignee to the original debtor in pursuance of the assignment, was valid against the assignor and his vendees, even when the debt was not novated by the assignment, and never paid to the assignee.

It is contended on the one side, that this is an absolute sale, vesting in Lesassier all the rights of Andrus, and authorising him as master of the thing, to discharge it, and give even a gratuitous release; and on the other side, that it amounts only to a power of attorney; that the debt due by Andrus to Lesassier, was not novated by that assignment, and that although a payment made to Lesassier, would have been a good payment, yet it is evident from the whole tenor of the act, that the intention of the parties was, that Lesassier was bound to recover the whole debt, which he might do in his own name, and to retain only the amount of the debt due to him.

It seems to us clear, that the debt due by Andrus to Lesassier, was not novated by the assignment. There are no words importing a novation. On the contrary, that debt was still to bear interest after the assignment. But it authorised Lesassier to prosecute in his own name, for the recovery of the debt, and we are inclined to think, that the defendants might have pleaded in compensation, a debt due by the assignee; but whether a release, purely gratuitous, would have discharged the debtors, appears to us very questionable.

This brings us to inquire, what was the real character of the two releases given by Lesassier, first to Brown's estate, and afterwards to Chretien, and whether considering Lesassier, as merely the attorney in fact, complied with a personal

interest, those releases recite, and are based on such con-
siderations and accompanied by such facts, as to conclude
John Andrus himself?

We cannot better illustrate our views of this part of the case, than by supposing, that John Andrus had sued Lesassier, to recover the balance of the debt, over and above the twelve hundred and fifty dollars, and we were called on to consider, how far the latter could justify himself in relation to his principal, for having executed those releases. Might he not say to his adversary, if you consider me, in relation to that matter, merely as your agent, under what circumstances was that agency created? At the time you authorised me to prosecute for that claim, were you not in possession of the slaves, under an agreement, verbal if you will, but still an agreement binding on you, that the sale should be rescinded? Did you not take back the slaves, with a knowledge that they were *unsound*, and that Brown had a valid defence? Can it be supposed, that you intended to prosecute for the whole amount of the claim, which you admitted would be unjust? Did you not refer Mr. Chretien to me, as charged with the whole business, asserting at the same time, that he was released? You either intended to deceive me, and cannot now profit by your own wrong, or to make me the instrument, by which Brown and Chretien should be defrauded, by disarming them of a just defence, and then holding them to their full responsibility, notwithstanding both your acts and mine?

It is not necessary for us to say, how far such a defence would avail Lesassier in the case supposed, sustained by the evidence in this record. But we are to inquire how far a similar defence, now set up by Chretien, under the same evidence, ought to avail him. Two instruments are produced by him, signed by Lesassier as assignee. By the first, between him and the curator of Brown's estate, it is recited, that suit had been brought by him, for the purpose of obtaining a judgment, which would authorise him to seize and sell the slaves in question, the sale having been previously cancelled, by verbal agreement between Brown and

42

WESTERN DIST.
September, 1834.

ANDRUS ET AL.
vs.
CHRETIEN.

Andrus, and he engages that the judgment shall never be used for any other purpose. In consequence of the agreement, the curator forbore to set up the legal defence, put in one merely nominal, and suffered judgment to go. In pursuance of that judgment, the slaves then in possession of John Andrus, in the parish of St. Landry, were sold by the sheriff, and purchased by Lesassier.

The second is a release, executed by Lesassier as assignee, in favor of the defendant Chretien, in which he declares, that having obtained the judgment above mentioned, merely to obtain a title, by which the slaves could be sold, he gives Chretien as full and complete a discharge, as if the debt had been paid.

Were these releases purely gratuitous, or were they founded on considerations, which make them conclusive upon John Andrus? The defendant as surety of Brown, having a right to plead all the exceptions of which the principal might avail himself, except those merely personal, the two agreements must be taken and considered together, in their legal effects. It results from both of them, that as the obligation of Brown to pay, was, to say the least of it, doubtful, in consequence of the defects of the slaves Andrus had taken them back ; that in consequence of the death of Brown, in the mean time, it became impossible to cancel the sale by agreement, and that to avoid the delay and trouble of restoring them to the estate, and proceeding directly to have the sale cancelled judicially, his agent or assignee had resorted to the means above related, as a species of machinery, by which Brown's estate should be divested of the title. John Andrus profited by this agreement, to a certain extent ; he enjoyed the labor of the slaves without interruption, from within a short time after the original sale, up to the sheriff's sale, under the judgment ; he avoided perhaps a tedious litigation, and the hazard of paying the costs and expenses of an expensive law suit, if Brown's succession had insisted on its legal defences.

But it is said this defence rests mainly on parole evidence, which was received, subject to all legal exceptions, and that

it was clearly inadmissible to prove a verbal agreement, to cancel a sale of slaves. Undoubtedly parole evidence is inadmissible, to establish or destroy title to slaves. This is a principle too well settled to admit a doubt, and if the title to the slaves in question, depended on this evidence, it would be entirely disregarded. But the question here, is not whether Brown's estate was divested of title, by virtue of the agreement, or whether the slaves became thereby the property of Andrus. We think the parole evidence admissible to prove, as collateral facts, that Andrus was in possession of the slaves at least; that he was in possession with the consent of Brown; that he had examined the negroes, and was convinced they were defective; that he declared to the attorney of Chretien, that he had the slaves, and that he considered Chretien discharged, and referred him to Lesassier, as charged with the whole business; that a redhibitory action, as stated by Mr. Brownson, was about to be brought by Brown, soon after his purchase; and that he *desisted* from bringing the suit, in consequence of Andrus taking back the slaves, after inspecting them in company with him and his own attorney, who were convinced of the fact, that the defects did exist.

With this view of the case, one of two conclusions seems to us inevitable, either that the intention of John Andrus and Lesassier, were fair and honest, and that the steps taken by them, either separately or together, were intended merely to divest the estate of Brown, of the legal title to the slaves, by the only means which remained, without any expectation of claiming the debt; or that the acts of both were calculated, if not designed, to deprive Brown, and consequently Chretien, of a just legal defence. More than fourteen years have elapsed since the purchase, and seven since the release given by Lesassier. Soon after the purchase, the slaves were taken back, and were never afterwards in possession of Brown, and these acts were accompanied by the declaration, that Chretien was discharged. We think ourselves bound to adopt that hypothesis, which comports with the good faith and honor of the parties concerned, and to say, that the acts

WESTERN DIST. *September*, 1834.

ANDRUS ET AL. *vs.* CHRETIEN.

Parole evidence is *inadmissible* to prove a verbal agreement to cancel a sale of slaves, or to establish or destroy title to slaves.

Parole evidence is *admissible* to prove collateral facts, such as that the seller took back certain slaves from the purchaser, and had them in possession with the consent of the latter in consequence of redhibitory defects and to avoid litigation.

WESTERN DIST. done, were in pursuance of an intention to cancel the contract,
September, 1834. and to release the defendant, rather than that which would
ANDRUS ET AL. present them, in relation to him, as concurring in a series
vs.
CHRETIEN. of acts, productive of the most gross injustice.   Believing,
therefore, that John Andrus himself, would not be entitled
to recover, the present plaintiffs can have no better right.

It is, therefore, ordered, adjudged and decreed, that the
judgment of the District Court be affirmed, with costs.