### No. 9293.

### NATHANIEL T. EDSON VS. MORRIS McGRAW ET AL.

It is the duty of clerks of court, in making transcripts of appeal for transmission to this Court, to observe the rules of this Court and the law relative to the confection of such transcripts.

Where transcripts transmitted here, under a certificate attesting their completeness, are materially deficient by the fault of the clerk making the same, the Court will not permit them to be patched up by additional or supplemental transcript, but will order the clerk to make, at his cost, a new entire transcript of the record below, such as he should have made at first under the rules of the law, and will eventually exercise its punitory powers and inflict a fine. R. S. 1907.

An unverified charge that a transcript is defective by the fault of the appellant will not justify the dismissal of the appeal.

The appellant is protected by the full certificate of the clerk, where it is not shown that he knew the transcript to be deficient, and procured the certificate notwithstanding.

The clerk of the district court will not be held to make, at his cost, a new transcript, although that filed here was made in disregard of the rules of this Court, and is defective, where it is claimed by him that the transcript was thus made by the appellant, or under his supervision. The question of cost should remain an open one.

Edson vs. McGraw et al.

Where there has been a written agreement to sell real estate upon specified conditions and for a price mainly on credit, with the stipulation that if the payments are not made the seller shall have the option to cancel the contract upon giving the buyer thirty days' notice, and may impute the payments already made as rent, and the buyer abandons the contract and himself gives notice to the seller of his surrender of all rights thereunder, the latter is dispensed with the duty of giving the notice stipulated in the contract. It would be a vain and superfluous thing to do.

Parol proof is admissible of the acts of one pretending to rights under a written agreement to sell real estate for the purpose of shewing that such acts are inconsistent with and repugnant to a claim of ownership under such agreement, and that they repel the reality of such claim and demonstrate the fraudulent pretention set up at a late day, of ownership or of rights to ownership under such agreement.

PPEAL from the Civil District Court for the Parish of Orleans. *Tissot*, J.

*Walter H. Rogers* for Plaintiff and Appellant.

*Joseph P. Hornor* and *Francis W. Baker* for Defendants and Appellees.

*Fred. D. King* for the Clerk of the Civil District Court.

ON MOTION TO DISMISS AND FOR CERTIORARI.

The opinion of the Court was delivered by

BERMUDEZ, C. J. The appellee complains that the transcript is made in violation of the rules of this Court and is materially deficient.

Since the filing of the motion to dismiss, and before its calling, the appellant has moved for an order on the clerk of the district court to complete the record, specifying the documents desired.

There is no verified averment that the transcript is incomplete by the fault of the appellant, who is protected by the clerk's certificate which attests the fullness of the record.

It is apparent that the transcript was made in such utter disregard of the rules of the Court, that far from facilitating, it embarrasses an investigation of the case.

We will not undertake to enumerate the many different particulars in which it thus violates those rules, but simply refer to the motion to dismiss for specification on the subject.

It is proper that the attention of the clerk of the lower court be drawn, not only to the rules of this Court, but also to section 1907 of the R. S., which vests this Court with certain punitory powers to be exercised where the irregularities and deficiencies which exist in transcripts are attributable to the clerk.

We cannot dismiss the appeal and must grant the motion of the appellant. We will reserve the rights of the appellee, if any, to move

seasonably for the dismissal of the appeal, after the motion of appellant will have been acted upon, should the transcript then be defective by appellant's fault; but, in as much as compliance with that motion would amount to a patching up of the objectionable transcript, we think that the clerk should be made to do what he has omitted and should do.

It is therefore ordered that the clerk of the civil district court for the parish of Orleans do, within a delay of fifteen days, make such new transcript of the record below, as the rules of this Court and the law require, at his costs, under penalty of such fine as the Court may deem proportioned to a dereliction of duty on his part in the matter.

### ON PETITION FOR REHEARING.

The clerk of the district court complains of our previous decree directing him to make a new and proper transcript, *at his cost*, of the record] of the case below, claiming that the transcript, which was filed here and which he admits was not made in conformity with the rules of this Court—was made by the appellant, or under his supervision, and was known to be incomplete and defective by the appellant who assumed all responsibility in the premises.

The clerk, under that state of facts, is censurable. He should not have issued the full certificate which is attached to the transcript and which has become, at this stage, a shield to the appellant, whose acts of omission and commission he has made his own.

Had the appellee, in support of the averment of incompleteness of the transcript by the fault of the appellant, produced the proof which the clerk relies upon, the motion to dismiss might have prevailed; but this he has not done.

If it be true, as the clerk charges, that the appellant is at fault, it would not be just to have him to make the transcript at his cost. The appellant should be required primarily to pay those costs, as is usual in appeals generally, without prejudice to his right, which is reserved, of claiming reimbursement of the same from the clerk, who otherwise should have had to bear the same.

It is therefore ordered that the words " *at his cost*" found in our previous decree, be stricken therefrom, and the words " *at appellant's cost*" be substituted thereto, and that thus amended the said decree remain undisturbed.

### ON THE MERITS.

MANNING, J. The action is to compel the execution of a title to two improved lots with pottery-machinery in this city, or in default thereof to recover three thousand dollars as their value.

These lots belonged to McGraw and had been leased to one Miller who was a good-for-nought and an unsatisfactory tenant. Swan was his friend and relative and desired to help him, and for that purpose bargained with McGraw to buy the lots and pottery, but as Swan did not wish on some account to appear in the transaction, it was agreed that Edson should be the nominal purchaser. Accordingly on August 1, 1880, McGraw made a written agreement with Edson to sell him the property for two thousand dollars of which two hundred were paid cash with the stipulation when eleven hundred dollars were paid McGraw would make title and retain a mortgage for the residue. This agreement was not recorded until another disposition was made of the property as we shall see later on.

Miller remained in possession and he or Swan delivered pottery to McGraw of the value of $322.65. No other payment was made.

The agreement to sell contained the stipulation that if after thirty days notice to pay as agreed on for the credits the payment or payments were not made, then whatever had been paid should be considered as rental of the property at fifty dollars a month and McGraw should have the option to reclaim the property.

Some time passed. Miller was an ingrate and offered violence to his benefactor Swan, and once when Swan came on the premises threatened to shoot him. Swan was frightened by the demonstration and determined to wash his hands of Miller and his business. He accordingly told McGraw he would have nothing more to do with the matter— would pay no more——and what was paid might go as rent and if there was any surplus he would sooner lose it than be in fear of his life from Miller's violence. He never made any claim afterwards of the property, nor did Edson say anything about it to McGraw.

McGraw then, about February 1881, made a new lease to Miller who took Pajenski into partnership in the pottery business. They soon quarreled and separated, and in April 1881 McGraw sold the property to Pajenski and in the following month Miller sold to Pajenski some of the pottery and left. Pajenski recorded his title and took possession. Edson was all the while silent, but after Pajenski's title had been recorded, he recorded his contract for the sale.

Miller's wife then brought suit against McGraw for the property on some pretence which of course came to grief, and then Edson instituted this suit. He claims that the property has all along been his, and that the rents McGraw has received from Miller and Pajenski have more

than paid the purchase price, and he sues to recover the surplus and to compel McGraw to complete his title or pay him the sum first above mentioned.

It is manifest he has not the shadow of a claim. The facts detailed, culled with infinite labour from a record that is a mass of incoherent confusion, exhibit him without any ground upon which to base his pretentions. He relies upon two special objections to heaving the defence.

1. No notice was given as required in the contract of sale that McGraw would avail himself of his option to cancel it and consider the payments as rental. None was needed because Swan, the real party to the contract, had himself told McGraw he was done with the matter and would make no claim for the surplus of payments over the rental. Notice by McGraw to Swan was idle and vain when Swan had given notice that he no longer claimed any right under the contract. Green v. Fonbene, 2 Ann. 957. The objection is an afterthought for there is no allegation in the petition of the want of putting in default.

2. That all the parol proof of Swan being the real party to the contract of sale with McGraw and of his and Miller's payments thereunder, and of Swan's subsequent abandonment of it, was improperly received because inadmissible to contradict or vary the written agreement.

The whole defence is based on the simulation to which Edson was a consenting party and is set out in the answer. The testimony was not so much of declarations of any or all the parties as of the acts of Edson—his continuous silence and inaction when Miller, whom he claims was his tenant, was ejected from the premises—when an actual sale was made to Pajenski and recorded—his failure to record his own contract, which he claims made him owner, until after Pajenski's sale had been recorded—his standing by quiescent during the progress of Mrs. Miller's suit against McGraw without complaint or intervention— Edson never made of McGraw any claim, demand, complaint or remonstrance, nor did he ever speak to him about the property, its rents or tenants from August 1880 when he pretends to have bought until November 1882 when this suit was instituted. Yet during the whole of this interval tenants were changing, disputes between Swan and Miller were recurring, a sale was recorded of the property to another person, a suit had been instituted by yet another to recover it, and he opened not his mouth. Where a party thus acts so as to forbid the belief that he lays claim to property and his conduct is inconsistent

with the pretention of ownership, and the paper-writing under which he claims title is withheld from the public records, he cannot afterwards set up his title to defeat a sale made to another in good faith. This would protect Pajenski, and parol evidence of such acts is admissible to shew the fraudulent pretence under which ownership is claimed against McGraw. Bordelon v. Blancand, Manning's Unrep. Cas. 116; Gardiner v. Dezutter, Idem, 213.

The lower judge took this view of the case and the defendants had judgment.

Judgment affirmed.

Rehearing refused.