**(109 So. 341)**

**No. 27264.**

**COLLINS v. HUCK et al.**

(June 9, 1925.  Rehearing Denied July 3, 1926.)

*(Syllabus by Editorial Staff.)*

1. **Mines and minerals** ⚏➞74—**Evidence held to show that contract to assign mineral lease was withdrawn from escrow, with acquiescence of all assignees, to end transaction, and hence contract was terminated.**

   Evidence *held* to show that, after contract to assign mineral lease, together with assignees' check to guarantee performance of certain stipulations, was deposited in escrow, assignee notified assignor that assignees could not raise funds, and contract and check were withdrawn, with acquiescence of coassignees; hence contract was terminated, and assignor was entitled to cancellation of subsequent recordation thereof.

2. **Principal and agent** ⚏➞171(1)—**Mandate; coassignees, having actual knowledge that their associate secured withdrawal from escrow of contract to assign lease to end transaction, and acquiescing therein, held to have impliedly consented.**

   Where assignee, in contract to assign lease, though without authority to represent coassignees, secured withdrawal of contract from escrow with intent to surrender contract, and coassignees had actual knowledge of what was done, and acquiesced therein, they were deemed to have impliedly consented.

3. **Evidence** ⚏➞466 — **Parol evidence of acts done inconsistent with continuance of contract to assign mineral lease, and of explanatory statements, held admissible to show contract had been surrendered.**

   That contract to assign mineral lease, together with attached check of assignee to guarantee performance of certain stipulations, was withdrawn from escrow on solicitation of

161 LA.—21

assignee, and why they were withdrawn, *held* admissible, notwithstanding it was parol evidence, to show contract had been surrendered.

4. **Judgment** ⚏➞239—**Where assignees caused surrendered contract to assign mineral lease to be recorded, judgment for damages should have been rendered against all.**

   Where contract to assign mineral lease was surrendered by assignees, to which each acquiesced, and subsequently assignees caused contract to be recorded, judgment for damages sustained by recordation should be rendered against all in solido.

Appeal from Eighth Judicial District Court, Parish of La Salle; F. E. Jones, Judge.

Suit by S. M. Collins against John A. Huck and others. Judgment for plaintiff, and defendants appeal. Judgment amended, and affirmed as amended.

Theus, Grisham & Davis, of Monroe, for appellants.

Wise, Randolph, Rendall & Freyer, of Shreveport, Thornton, Gist & Richey, of Alexandria, and P. S. Gaharan, Jr., of Jena, for appellee.

OVERTON, J.  This is a suit instituted against John A. Huck, R. H. Bruce, J. T. Allison, and L. T. Langston to cancel the recordation of a contract by which plaintiff agreed to assign to defendants a mineral lease on certain lands in the parish of La Salle; to enjoin defendants from constructing a derrick on the land described in said lease, and from committing depredations thereon; and to obtain judgment against defendants in solido for $400,000, with legal interest thereon from judicial demand, for willfully slandering plaintiff's title to said lease, by recording a copy of the contract to assign the same, after, it is alleged, the contract had been forfeited and surrendered.

The contract, the recordation of which is attacked, contains two provisions, which we deem it best to quote, in order to convey a

proper understanding of the case. These provisions are as follows:

"The party of the first part (plaintiff) is to obtain and secure at the expense of the party of the second part (defendants), abstracts of title covering the N. ½ of S. E. ¼ and S.½ of N. E. ¼, section 6, T. 10, R. 2 East (a part of the land included in the lease to be assigned), which said abstracts are to be examined by Nicholls Pugh, an attorney of Monroe, La., who will pass on the titles to the above-described land, and all charges of Nicholls Pugh on account of examining said abstracts, and for curing of defects in said titles, are to be paid by party of the second part, and upon the approval of said titles by Nicholls Pugh the party of the second part is to commence drilling operations within 30 days from the date of this contract, or, in the event the title to this particular 160 acres has not been approved, time is to be extended to begin drilling operations until such titles are approved, said Nicholls Pugh is to use all diligence in obtaining abstracts and approving titles to said tract or tracts. * * *

"It is further understood and agreed that the party of the second part is to deposit the sum of one thousand and no/100 ($1,000) dollars with the Central Savings Bank & Trust Company of Monroe, La., to guarantee the faithful and specific performance of the drilling of a well herein referred to, the said one thousand and no/100 ($1,000) dollars to be returned to the parties of the second part when the surface casing is set."

The lease, which it was agreed to assign, is on 600 acres of land. The agreement was to assign the lease on 200 acres of the land, when the 12-inch casing would be set in the well which defendants agreed to drill; on 200 acres additional, when the well would be drilled to a depth of 1,000 feet, and the remaining 200 acres, when the well would be drilled to a depth of 1,600 feet. The consideration for the assignment was the drilling of an oil or gas well on the property, under the terms and conditions named in the contract. The contract is dated August 13, 1924.

The contract to assign the lease and the $1,000 mentioned therein were deposited in the Central Savings Bank & Trust Company, as provided in the contract, and Mr. Pugh was employed to examine the title to the 160 acres, mentioned above, and to cure any defects that might appear in the title thereto. On September 19, 1924, Pugh wrote a letter to Bruce, one of the defendants herein, in which he expressed his willingness to approve, and, in fact, did approve, the title to the land submitted to him for examination, and also the validity of the lease, which plaintiff had agreed to assign, though acknowledging that there were certain things to be done to perfect the title to the land, but which he considered had progressed sufficiently to justify him in approving the title.

The cancellation of the contract to assign the lease is sought, it may be said, on two grounds. One of the grounds is that, a few days after Pugh approved the title to said land, Bruce, acting for himself and the remaining defendants, notified plaintiff that he and his associates were unable to raise the necessary funds for drilling the well, which they had agreed to drill, and accordingly the $1,000 and the contract, in escrow, were withdrawn, with the consent of Bruce, and the contract terminated. The remaining ground is that, after Pugh had approved the title, defendants did not commence drilling operations within 30 days from the date of that approval, as prescribed in the contract, but permitted those 30 days to elapse without making any effort to begin operations.

The record discloses that defendants bound themselves to pay the cost of making the abstract of title, mentioned above, and to pay Pugh for passing on the title, and for his work in curing any defects that might appear therein. The record also discloses, or, in other words, the weight of the evidence shows, that, when Pugh delivered to Bruce his opinion, relative to the title, Bruce raised no objection to the approval of the title, as given by Pugh, but that shortly thereafter he, together with Allison and Langston, two of the remaining defendants and parties to the contract to assign, went to Pugh's office to ascer-

tain how much of the $1,000, put in escrow, could be gotten back, and that they were influenced on that occasion in going there by the fact that they were unable to drill the well, called for in the contract to assign, for the reason that certain parties, who had agreed to assist in financing the drilling of the well, had concluded not to do so. After discussing the matter with Pugh, the conclusion was reached to see plaintiff relative to the matter. The following morning Pugh and Bruce went to see plaintiff, and, after discussing the matter with him, the conclusion was reached to see Mr. Q. T. Hardtner, an official of the Urania Lumber Company, which company had granted the lease to plaintiff, and to discuss the matter with him. Mr. Hardtner was seen, and testified relative to the conversation that ensued as follows:

"Mr. Bruce and attorney Nicholls Pugh and Mr. Sam Collins (plaintiff) came to my office, and Mr. Bruce said that he was unable to carry out his contract and wanted to forfeit the contract and take down his money, but that he was in desperate circumstances, and needed some money for personal use, wanted to pay for his abstracts purchased at Jena, and wanted to pay his attorney, all of which amounted to about $500, and asked for my consent for this agreement to be made. I said, 'Yes,' I was perfectly willing to help them out, and so they departed and went to Monroe, all satisfied and happy.

"Q. Who?
"A. Mr. Bruce, Mr. Pugh, and Mr. Collins. It was all thoroughly understood that the contract was forfeited, and it was an accommodation on our part to allow them to use $500 of that money for other purposes that was clearly forfeited."

After the conversation with Hardtner, Bruce, Pugh, and plaintiff went to the bank in Monroe, where the contract to assign the lease and a check for $1,000, attached to the contract, were in escrow. Plaintiff withdrew, in Bruce's presence, the contract and the check, retained the contract, cashed the check, delivered to Bruce $250, paid $150 due by defendant for the abstracts, and also $100,

due by them to Pugh for his services, retained $50 in settlement of an indebtedness due him, and divided the balance, amounting to $450, between himself and Hardtner, or the Urania Lumber Company.

Bruce testifies that only $500 of the amount deposited in escrow was to be withdrawn; that the balance was to remain on deposit; and that the contract was to continue in full force and effect; and Bruce contends, as well as do the remaining defendants, that the correspondence which ensued between him and plaintiff shows that the contract was to remain in force. However, we think that the weight of the evidence does not support Bruce in his evidence in the foregoing respect, nor do we think that the correspondence, referred to, shows that the contract was to remain in force after the withdrawal of the deposit from the bank. At most, the correspondence shows that, while plaintiff regarded the contract as forfeited, still that he was willing to assign defendants another lease on other property in the same field and, if possible, on the same property, and even to give them an opportunity to redeem the money they had forfeited, provided defendants succeeded in financing an undertaking that would enable them to drill a well on the property.

[1, 2] Our conclusion is that, if the parol evidence admitted is admissible to show the withdrawal of the contract and the check attached thereto from escrow and the reason why the withdrawal was made, then we should hold that the contract was terminated when the withdrawal was made, provided it appears that Bruce had authority to represent the remaining defendants in the matter, or else that they knew what had been done, and the reason why, and raised no objection thereto, but impliedly consented. It does not appear that Bruce had authority to represent any of them, but, in so far as Allison and Langston are concerned, it appears that they were of the party that went to Pugh's office

to ascertain what part, if any, of the $1,000 defendants could get back, and on this occasion it may be said that they informed Pugh that they were unable to comply with the contract, for the reason that those who were to finance them had concluded not to do so. We feel safe, therefore, in holding that Allison and Langston had actual knowledge of what was done a day or two later, and acquiesced in the surrender of the contract. As to Huck, while he was not present, yet we are satisfied from the record that he had the same knowledge, and raised no objection to what was done.

[3] Defendants contend, however, that the evidence offered to show the surrender and abandonment of the contract is not admissible on the theory that, as an agreement to assign a contract granting a mineral lease must be in writing in order to be valid, the surrender of the right to the assignment, or the cancellation of the contract to assign, cannot be shown by parol, and hence that their objections to this evidence should have been sustained. If the evidence offered had been of a mere verbal agreement to cancel, our inclination would be to rule that the evidence should not have been received. Where, however, acts are done by one which are inconsistent with the continuance of a contract to convey a real right, and which tend to show an abandonment or surrender of the contract, we think that parol evidence is admissible of those acts and of statements made, which are explanatory of them, although the effect of the evidence will be to show that the contract, which, to be valid, must be reduced to writing, has been abandoned or surrendered to the grantor. We think, therefore, it was competent for plaintiff to show the withdrawal of the original contract and the deposit, and why they were withdrawn, for the purpose of showing the surrender of the contract. See, in this connection, Andrus v. Chretien, 7 La. 318, and Edson v. McGraw, 37 La. Ann. 294.

Our conclusion is that plaintiff is entitled to have the recordation of the contract canceled, and hence that the judgment of the lower court is correct in this respect.

[4] We now reach the demand for damages. This is based upon the allegation that defendants caused a copy of the contract to assign the lease to be recorded in the conveyance records of the parish where the land is located after the contract had been forfeited and surrendered, thereby making it impossible, or next to impossible, for plaintiff to dispose of the lease. The trial court rendered judgment against all of the defendants in solido, except Huck, for $1,000, with legal interest thereon from judicial demand until paid. Plaintiff, in his answer to the appeal, has asked that the judgment be amended by increasing it to the full amount of damages prayed for, and by condemning Huck, in solido, with his codefendants for the damages to be awarded. It appears that defendants caused a copy of the contract to be recorded about six months after the original had been surrendered and the deposit withdrawn. A day or two before the surrender was made, a salt water well was brought in near the property in question, which affected the value of the lease that was to have been assigned. Shortly before the contract was recorded, an oil well was brought in near the property, which caused the lease, which was affected by the contract, to rise in value. The effect of the recordation of the contract has been to take, or virtually take, plaintiff's lease out of commerce. We think that plaintiff has suffered damages by the recordation of the contract. In our view the amount awarded by the trial judge is substantially correct. However, he should have condemned Huck with his codefendants for the damages suffered. There is no sufficient reason to hold that Huck is not also responsible for the damages sustained.

For the reasons assigned, it is ordered and

adjudged that the judgment appealed from be amended by condemning said Huck, in solido, with his codefendants for said sum of $1,000, with legal interest thereon from judicial demand until paid, and that, as thus amended, said judgment be affirmed, appellants to pay the costs.