## TELOTTE v. METROPOLITAN LIFE INS. CO.

No. 16844.

Court of Appeal of Louisiana. Orleans.

March 21, 1938.

Marie Adelaide Baudier, of New Orleans, for appellant.

Spencer, Gidire, Phelps & Dunbar and Wood Brown, all of New Orleans, for appellee.

JANVIER, JUDGE.

Gertrude Telotte, the widow of John Lacoste, seeks to recover the proceeds of a policy of life insurance issued by the defendant company on the life of Lacoste. The policy, by its terms, is payable to the "executor or administrator of the insured," contains a paragraph familiarly known as the "facility of payment clause," and also a provision to the effect that "this policy constitutes the entire agreement between the company and the insured and the holder and owner thereof. * * * Agents (which term includes also managers and assistant managers) are not authorized and have no power to make, alter, or discharge contracts." It also contains a further provision reading, as follows: "If the terms of this policy are not satisfactory or if its conditions are not accepted and agreed to, the policy may be surrendered for cancellation * * * within two weeks from date hereof; and if so surrendered within said period, the premiums paid hereon will be returned."

In her original petition plaintiff alleged that Lacoste had applied for the policy and that it had been kept in force for more than three years, and that she was entitled to the proceeds. She sued solely as widow, not as administratrix or executrix, and did not allege that she had been named beneficiary. The policy itself, as we have stated, was payable to the "executor or administrator" of the estate of Lacoste, and the defendant, therefore, by exception of no right or cause of action, challenged the right of plaintiff as widow to bring suit for the proceeds. This exception was based on the decision rendered in Toles v. Metropolitan Life Insurance Company, 166 So. 172, in which we held that there is no right of action in any one to claim, as beneficiary, the proceeds of a policy payable to the estate of the assured. The exception was sus-

tained, but plaintiff was granted the right to amend her petition, and to "set forth with certainty whether she is the administratrix, executrix, beneficiary named in the policy, or that she was recognized by a competent probate court * * * as sole heir and sending her into possession of the estate of the deceased."

Accordingly, she filed a supplemental petition in which she alleged that she had herself contracted with the insurer for the policy of insurance on the life of her husband, and that the agent had been advised and instructed that she was to be named beneficiary, but that the policy, when issued, was not made payable to her as beneficiary, and that it was couched in such technical language that "it was impossible for the petitioner to determine, without having a knowledge of the said technical language, or of the specific law applicable, that her instructions had not been followed." To this amended petition defendant filed another exception of no right or cause of action, which again was sustained.

From a judgment of dismissal plaintiff has appealed.

■ We find that in neither of the petitions is there an allegation of fact which could be construed as a charge of fraud on the part of the insurer, or of its agent; and plaintiff, in support of her charge that there was fraud, relies solely on her general allegation or conclusion "that the actions of the said defendant's agent, in not having the policy issued as instructed, coupled with the language in which the said policy is couched, was such as to constitute an action of fraud."

It is difficult indeed to determine whether plaintiff intends to abandon her original allegation to the effect that the deceased had himself applied for the policy and had thus entered into the contract of insurance. It must be remembered that in the petition she alleged that: " * * * On or about July 10nth., 1933 petitioner's husband entered into an insurance contract with the defendant. * * *"

If that allegation is true, then we find that a third person, plaintiff, is now attempting to reform and recover under a contract made between two other parties and with which she, by the very terms of the contract, is in no way concerned.

She alleges that her husband entered into the contract; that it was in force for more than three years without complaint; and that it should have been a contract entirely different from what it was finally discovered to be. Surely, if she is to be bound by that allegation, she has not set forth in her supplemental petition a cause of action in herself. If, on the other hand, she now intends to abandon the allegation that the contract was entered into by her husband, then we find that she charges that she herself entered into the contract; that she received the policy, which, on its face, clearly shows that she was not named beneficiary; that she paid premiums for more than three years on the policy without making the slightest protest.

■ Since, obviously, she cannot recover under the contract as it is now written, there can be no recovery at all unless we treat her suit as one to reform the contract, and then as a claim under the contract as reformed. If we treat it as a suit to reform, we find ourselves faced by the overwhelming and unanimous jurisprudence that a suit to reform must be promptly brought.

In Texas Company v. Rosenthal-Brown Fur Co., D.C., 12 F.2d 297, which was affirmed by the Fifth Circuit Court of Appeals in 16 F.2d 1022, and in which the Supreme Court of the United States refused to grant a writ of certiorari in 274 U.S. 746, 47 S.Ct. 658, 71 L.Ed. 1327, the United States District Court held, as is evidenced by the syllabus, that: "Lessor's failure promptly to notify lessee of alleged erroneous omission of provision for cancellation of lease on sale of premises for over a year, and until after sale, held to preclude reformation."

The Supreme Court of the United States in New York Life Insurance Company v. Fletcher, 117 U.S. 519, 6 S.Ct. 837, 844, 29 L.Ed. 934, referring to a plaintiff who alleged that he had been fraudulently given a policy different from that contracted for, said: "He could not hold the policy without approving the action of the agents, and thus becoming a participant in the fraud committed. The retention of the policy was an approval of the application and of its statements. The consequences of that approval cannot, after his death, be avoided."

In Travelers Insurance Company v. Wolfe, 6 Cir., 78 F.2d 78, 81, in which the Supreme Court of the United States also denied an application for a writ of certiorari (296 U.S. 635, 56 S.Ct. 158, 80 L.Ed. 452) the court discussed the question of when a contract of insurance is entered into and the right of the agent to make a

contract different from that which the company was willing to make. From that decision we quote the following: "It must be borne in mind, however, that the application when made is not a contract. It may be accepted or rejected by the insurer. If accepted without qualification, and delivery and premium payment follow, a contract results. If the policy, however, does not conform to the application (though we do not agree that such is the case here), the policy, as noted in the Sellars Case [4 Cir., 30 F.2d 42] is merely a counter offer which the insured may at his pleasure accept or reject. If he does accept it, pays the premium, keeps the contract until the loss occurs, he cannot in a suit at law upon it ask to have it enforced otherwise than according to its terms."

In Drogula v. Federal. Life Insurance Company, 248 Mich. 645, 227 N.W. 692, 693, we find a discussion of the duty of the plaintiff to read the conditions of the policy and learn what the policy contains. There the court said: "The fact that the plaintiff may not have read the printed conditions of his policy, and relied, in ignorance of them, upon the implied or assumed powers of the agent, cannot help him. It was his business to know what his contract of insurance was, and there can be no difference in this respect between an insurance policy and any other contract."

And in Maryland Casualty Company v. Adams, 159 Miss. 88, 131 So. 544, 546, we find discussed a situation which plaintiff alleges existed here; that is, the question which is presented where the plaintiff, in a suit to reform, alleges such illiteracy as prevented an understanding of the terms contained in the policy. There the court said: "It is true that the bill of complaint alleges that on account of his illiteracy the assured was unable to read the policy, and that appellant's agent fraudulently gave him no opportunity to read it; but other averments of the bill clearly negative the latter allegation and show that the assured had every opportunity to read the policy, or have it read to him. It is averred that the policy was delivered to the assured when it was prepared, and that the injury to the appellee occurred about four months thereafter, during which intervening period the assured had every opportunity to read or have read to him the policy; and as said in Mixon v. Sovereign Camp, W. O. W., 155 Miss. 841, 125 So. 413, 415, 'of course the suggestion of illiteracy cannot prevail, for the manifest reason that there cannot be two separate departments in the law of contracts, one for the educated and another for those who are not. Certainly the laws on insurance could never be administered on any such basis.' "

Plaintiff cites several Louisiana cases involving the functions of agents of insurance companies, and from these authorities contends that the agent of the company was authorized to enter into the contract contended for by plaintiff, and that such agent having entered into the contract, the company is bound thereby.

■ In the first place, there is no showing that the agent entered into any such contract and, in the second place, it should be borne in mind that there is a vast distinction between the duties imposed upon agents of fire insurance companies and those imposed upon agents of life insurance companies, and that, while the agents of fire insurance companies may, in certain instances, be authorized to issue binders and thus, to some extent, to make contracts for their principals, the agents of life insurance companies have no such powers. Mr. Richards, in The Law of Insurance, 4th Ed., pp. 230–235, plainly illustrates this distinction.

Therefore, the cases cited by plaintiff involving the application of Louisiana law to fire insurance agents are not in point. Only one of the cases cited, Union National Bank v. Manhattan Life Insurance Company, 52 La.Ann. 36, 26 So. 800, involves the relationship between a life insurance company and its agent, and that case merely holds that a life insurance company, as any other corporation, generally speaking, acts through agents and representatives.

■ We think that, under the allegations of both petitions, no evidence would be admissible touching upon the general allegation "that the actions of the defendant's agent * * * coupled with the language in which the said policy is couched, was such as to constitute an action of fraud."

It is therefore ordered, adjudged, and decreed that the judgment appealed from be and it is affirmed, at the cost of appellant.

Affirmed.