154 So.2d 60 (1963)
Viola Sharkey FINCH
v.
BATON ROUGE PRODUCTION CREDIT ASSOCIATION and American Life Insurance Company.
No. 5870.
Court of Appeal of Louisiana, First Circuit.
June 3, 1963.
Sanders, Miller, Downing, Rubin & Kean, by Ben R. Downing, Jr., Baton Rouge, for appellant.
Breazeale, Sachse & Wilson, by Boris F. Navratil, Baton Rouge, for appellee.
Before ELLIS, LOTTINGER, HERGET, LANDRY and REID, JJ.
*61 LOTTINGER, Judge.
This is a suit on a life insurance contract under which the American Life Insurance Company of Birmingham, Alabama insured the life of Willie J. Finch, the late husband of Viola Sharkey Finch, petitioner, in the amount of $5,560.00. The Lower Court awarded judgment in favor of petitioner and against defendant for the sum of $4,800.00 with five (5%) per cent interest until paid. Both parties have filed an appeal.
On or about April 30, 1958 Willie J. Finch, a farmer residing in Amite, Louisiana, secured from the Baton Rouge Production Credit Association, a Louisiana credit corporation domiciled in Baton Rouge, and operating as a farmers' credit union, two loans. One loan was for the sum of $760.00 and was due in twelve (12) months and payable in monthly installments of $25.00 each. The other loan was for the sum of $4,800.00, and payable in sixty (60) monthly installments of $80.00 each. Both loans were secured for the purpose of financing agricultural equipment and farm improvements.
Upon granting these loans, the association, acting as the agent for the American Life Insurance Company issued a twelve month life insurance certificate to the borrower, Willie J. Finch, in the sum of $5,560.00, being the total amount of both loans. This certificate, which was issued under the Master Policy held by the association covering insurance on its debtors, was dated April 30th, 1958 and for a term of twelve months. Under this certificate, the association was named as creditor beneficiary, and petitioner Viola Sharkey Finch was named as second beneficiary. The Master Policy contained a provision that the coverage would be extended an approved debtor who had requested such coverage from the association even though the association neglected to inform the company of such request.
The entire negotiations concerning the loans and the life insurance contract were conducted between Mr. Finch and one Edwin Smith, who was the field agent for the association. As such, Mr. Smith was the employee of the agent for the insurance company.
Some few days prior to April 30, 1959, the date on which both the $760.00 loan and the life insurance contract were to be re-negotiated, Mr. Smith, appeared at the plaintiff's residence in order to take care of these matters. At this time, Mr. Finch was confined in the Southeast Louisiana Hospital due to a mental condition. Mrs. Finch, however, offered to re-negotiate both of these matters on her husband's behalf and she testified that she made tender of payment of the premiums necessary to continue the life insurance contract in effect. She was advised by Mr. Smith, however, that he could not accept payment and renewal as Mr. Finch would personally have to sign the necessary papers. The evidence submitted by plaintiff indicates that Mr. Smith assured Mrs. Finch that both contracts would be kept in force until Mr. Finch returned home from the hospital, which at that time appeared imminent. He instructed Mrs. Finch to continue making the payments of $105.00 per month, which was done. Mr. Finch died on August 10 of 1959 while still in the hospital.
Subsequent to the death of her husband, petitioner made demand on the insurance company to pay the balance due on the loans, which was refused. This suit then was filed by petitioner against the insurance company and the association, seeking payment of the face balance of the insurance certificate. The suit, as it bears against the association, was dismissed upon an exception of misjoinder of parties defendant. After trial on the merits the Lower Court awarded judgment as aforesaid. The defendant appealed suspensively seeking a reversal of the judgment of the Lower Court, and the petitioner appealed devolutively seeking an increase in the amount awarded.
*62 There are two transactions before the Court. One involves the loan for $760.00 payable in twelve monthly installments. The other involves a loan for $4,800.00 payable in sixty monthly installments. Both of these loans, the one that matures in one year, and the other that matures in five years, were combined into one credit life insurance policy in the total amount of $5,560.00. We feel therefore, as did the Lower Court that these two transactions involving different periods of time should be considered separately. The questions with which we are faced are therefore, firstly, as concerns the twelve month loan, can the association through its employee, Mr. Smith, bind the insurance company on an express term life insurance policy by an implied waiver of the express expiration date of the policy in question? As to the second transaction, the question is which provision of the policy controls the twelve month express expiration date, or the provision providing for coverage of approved debtors who have requested coverage but the company has not been notified of such request?
With regard to the one year loan, the Lower Court, due to the lack of cases on point, resorted to analogous cases involving employee-employer group insurance contracts. Although the Lower Court did cite the majority rule to the effect that the employer is the agent for the employee for the purposes of insurance law, it cited Neider v. Continental Assur. Co., 213 La. 621, 35 So.2d 237, 2 A.L.R.2d 846, to the contrary. The Lower Court then held that one who is authorized to accept risks, issue policies by filling out blank instruments which are furnished him for that purpose, and renew policies, is to be considered a general agent of the company whose policies are issued, especially, where creditor life insurance is concerned. The Court then found that the association was the agent of the insurer.
The evidence discloses, without contradiction, that it was Mr. Smith who negotiated with the deceased in the securing of the two loans in question. In the process of such negotiations, it was necessary that an application form be completed. As a part of this form there is the question as to whether or not the applicant for credit desires life insurance coverage. Mr. Finch did want the insurance coverage, and the application was filled in accordingly. Upon the approval of the loan by the association, the insurance premiums were included in the amount loaned Mr. Finch.
Almost one year later the company forwarded Mr. Finch a maturity notice of the one year loan. As stated above, at this time the debtor was confined in the hospital. The record discloses that Mr. Smith, acting as the employee of the association, called upon Mrs. Finch on at least two occasions prior to the death of her husband. Although there is some contradiction in the testimony, the overwhelming weight is to the effect that Mr. Smith assured Mrs. Finch that the insurance coverage would be continued. This fact was testified to by Mrs. Finch, her daughter and her two sons. The only conflicting testimony is that of Mr. Smith himself. Mrs. Finch also testified that she made tender of payment of the insurance premiums, however Mr. Smith advised her that he was unable to accept these payments but that she did not have to worry as the policy would be continued in force. Based upon this testimony, the Lower Court held that, with regard to the five year loan, the insurance policy was continued in force, as the expiration date was waived upon the representation of the employee of the defendant insurance company's agent. We feel that the preponderance of the testimony is to the effect that Mr. Smith did indicate to Mrs. Finch that this policy would be continued in full force and effect.
The Lower Court then went on to state as follows:
"It is generally accepted that an agent of an insurance company can bind, by waivers, representations and other acts, the Company, notwithstanding a *63 policy requirement, as here, that waiver of conditions shall be evidenced in writing. Monroe Air Park No. 1, Inc. v. American Aviation & General Insurance Company [La.App.], 41 So.2d 795; Gitz Sash Factory, Inc. v. Union Insurance Society of Canton, Ltd., 160 La. 381, 107 So. [232]; Couch on Insurance, Para. 9:34 and 9:37. This same rule should apply to agents of Insurer's agents. But, it has been held that when the policy provides, in distinct language, that no agent shall have the power to change or modify its terms or waive any of its conditions, except by distinct and specific agreement in writing, the assured will be presumed to have notice, after the policy has been delivered to him, that the agent has no power to make any change in the terms and conditions of the insurance, except in the manner provided, and any attempt by the agent to waive by an oral agreement of policy conditions will be a nullity. Boyd v. American Fire and Casualty Co. [La. App.], 50 So.2d 688. Under the rule the Boyd Case there is no presumption of notice of the agent's lack of authority until the policy is in the hands of the insured. Here the provision limiting waiver and extension by oral agreement between the Insurer's agents and the Insured is found only in the master policy held by the Association and not in the certificate held by the insured; thus the plaintiff had no actual notice of the limitation of authority provision and should not be bound thereby, if there was a proper reliance on Mr. Smith's representations that everything would be taken care of as long as the plaintiff paid the $105.00 payment each month.
"The waiver or the course of conduct upon which reliance is based must be based on a just and reasonable ground, on which the assured had a right to rely. Thompson v. Knickerbocker Life Insurance Co., 105 U.S. 252, 26 L.Ed. 765; XXII L.L.R. 202, Waiver and Estoppel in Louisiana Insurance Law. In this one instance alone does this Court find that reliance was unreasonable, and we make this finding only because of the well settled rule that the express words of the policy, with which the insured can be charged with actual notice of, are the law of the contract. Bardwell v. American National Ins. Co. [La.App.], 94 So.2d 313; Gitz Sash Factory, Inc. v. Union Insurance Society of Canton, supra, and because agents of life insurance companies have been said to have no power to alter the express, unambiguous words of the contract, [Telotte] v. Metropolitan Life Insurance Company, [La.App.], 179 So. 616. Here, the plaintiff was fully cognizant of the fact that the payment of the $760.00 loan and the insurance would expire within 12 months after issuance unless certain policy provisions were met. Mr. Smith could not change the express words of the policy, and thus the plaintiff is precluded from recovery for this amount.
"This brings us to the second important issue and the 5 year loan. The contract provided expressly that unless there was a renewal the policy would lapse in 12 months; but the contract also provided, under the provision `those insured', that `Where the records of the Creditor disclose that the Debtor, whose application for loan has been approved by the Creditor, requested said Credit Life Insurance and the Company was not notified of such request for such insurance, the Debtor and the Creditor will nevertheless be protected to the same extent as if proper insurance certificate had been issued; provided the company was the exclusive and only insurer of loans of the Creditor at the time of such request by the Debtor.' This Court finds that the plaintiff did make such a request for coverage at the time she tendered the premium to Mr. Smith.

*64 "For the latter provision to apply, only three requisites need be shown: (1) The Association's approval of the Debtor's application for a loan, (2) A request for Credit Life Insurance by the Debtor, and (3) That the Insurer was the exclusive and only insurer of the Association at the time such debtor requested coverage. All three contingencies are present in this case.
"Certainly it may be argued that the 12 month expiration date controls over the above quoted provision, but the law in this State is that ambiguities in contracts of insurance will be construed in favor of the insured, Monteleone v. American Employers' Inc. Co., 239 La. 773, 120 So.2d 70; Schonberg v. New York Life Ins. Co., 235 La. 461, 104 So.2d 171, thus this Court holds that the insured falls under the terms of the quoted provision of the contract and no written application is needed as no loan renewal is required in this instance since the loan was for a period of 5 years. The loan is already approved, and the insurance coverage continues without reapplication as long as the premiums are paid as they mature. Even though the premiums are not actually paid due to a wrongful refusal of a valid tender of payment in anticipation of the due date thereof, the policy does not lapse, Sanders v. Independent Nat'l. Life [Ins. Co., 16 La.App. 212], 133 So. 451; Newton v. National Life [Ins. Co., U. S. A.], 161 La. 357, 108 So. 769; therefore, this Court takes it as established that the policy of insurance on the life of the debtor, Mr. Finch, covering the 5 year loan for $4,800.00, continued in force to the date of his death."
We are in accord with the above holdings by the Lower Court. The record discloses that Mrs. Finch was interested in continuing this life insurance in effect. Certainly she was not familiar with the provisions of the insurance contract which was held by the association. The only paper in the hands of the Finches regarding the insurance was the certificate, upon which no pertinent information was given except the amount and expiration date. With regard to the one year loan, the maturity date was prior to the death of Mr. Finch, and we do not believe that the insurance could have been continued in effect without a renewal of this loan. However, with regard to the five year loan, the maturity date had not yet been reached, and the only act by the Finches which was necessary to continue same in effect would be the payment of the premium due. Mrs. Finch offered to pay the premium, however the representative of the association told her not to worry that the insurance would be maintained. We do not believe that the Lower Court erred in its holdings with regard to the insurance policy, and its decision will be affirmed. With regard to the exception of nonjoinder of parties plaintiff, this exception is based upon the fact that petitioner, Viola Finch failed to join her eight children as parties plaintiff in this action. We feel that this was not necessary, as Mrs. Finch was named as second beneficiary of the policy, and any proceeds accruing to her thereunder would form no part of the estate of the deceased. The policy provides that the benefits payable thereunder shall be paid to the creditor "as its interest may appear" so as to discharge any indebtedness of the deceased, to the creditor association. Any balance remaining shall be paid to the second beneficiary.
The judgment of the Lower Court was in favor of petitioner and against defendant, American Life Insurance Company, in the sum of $4,800.00 (the balance due on the five year loan), with five (5%) per cent interest from judicial demand until paid. From this amount, the Court instructed payment by the defendant of the balance due the association on the original loan, and ordered payment of the remainder to the petitioner. We feel that the judgment *65 should be amended so as to deduct from the total amount therefrom an amount equal to the insurance premium which was due for renewal of the policy at the start of its second year. As amended, the judgment of the Lower Court will be affirmed, all costs of this appeal to be paid by defendant.
Judgment amended and affirmed.