233 So.2d 731 (1970)
Mrs. Bessie B. LEDOUX et al., Plaintiffs and Appellees,
v.
OLD REPUBLIC LIFE INSURANCE COMPANY, Defendant and Appellant.
No. 2991.
Court of Appeal of Louisiana, Third Circuit.
March 26, 1970.
Rehearing Denied April 14, 1970.
*733 Seale, Smith, Baine & Phelps, by Donald S. Zuber, Baton Rouge, for defendant-appellant.
Frugé & Foret, by Jack C. Frugé, Ville Platte, for third party defendant.
Young & Burson, by I. J. Burson, Eunice, for plaintiff-appellee.
Before SAVOY, HOOD and CULPEPPER, JJ.
CULPEPPER, Judge.
This is a suit for benefits and penalties under a group policy of credit life insurance. The plaintiffs are (1) Mrs. Bessie B. Ledoux, widow of Wilbur Ledoux, whose life was insured, and (2) the Basile State Bank, creditor of the debt which was insured. The defendant, Old Republic Life Insurance Company, issued the policy in question. Defendant filed a third party demand against its agents who wrote the insurance. From an adverse judgment, defendant appealed.
The substantial issues are: (1) Are three certificates of insurance totaling $16,800, issued to Mr. Ledoux in connection with loans he made from the bank, subject to the $10,000 limitation of coverage set forth in the group policy held by the bank? (2) Is the defendant insurer barred by estoppel, waiver or ratification to urge as a defense the $10,000 limitation in its group policy? (3) Is defendant's third party demand against its agents barred by ratification? (4) Penalties?
There is little dispute as to the facts. In May of 1967 a Mr. Wilson, representing Old Republic Life Insurance Company, contacted Mr. Fulton A. Bacon, president of the Basile State Bank, requesting that the bank use defendant's credit life insurance facilities. Following these discussions, the defendant entered into an agency agreement whereby Mr. Bacon, the president of the bank, was appointed agent to issue certificates of insurance under a group policy which was held by the bank. Mr. Bacon in turn designated certain bank employees to actually write the insurance at the time of the loans.
The agency agreement provides that the agent shall not bind the company "in an amount greater than $10,000 on any one life." The group policy delivered to the bank provides generally that subject to its terms and conditions and upon receipt of *734 proof of death of any insured debtor, the insurer agrees to pay to the bank the amount of insurance then in force with respect to such debtor. Any balance remaining after payment of the debtor's indebtedness to the bank is paid to the estate of the debtor. The policy contains a limitation that "In no event, however, shall the aggregate amount of insurance under this policy on the life of any one debtor exceed at any time $10,000."
During the year 1968 Mr. Wilbur Ledoux made several loans with the Basile State Bank. The defendant, Old Republic Life Insurance Company, through its agents at the bank, issued credit life insurance certificates on three of these loans. The form used for these certificates provides for two types of insurance. The first is "Decreasing Term Life Insurance" on which the premium rate is 1% of the loan and the benefits decrease as the indebtedness decreases. The other type is "Level Term Life Insurance" on which the premium rate is 2% of the amount of the loan and the benefit remains the same throughout the term of the insurance. All three of the certificates issued by defendant to Mr. Ledoux were for Level Term Insurance. The first was issued on March 7, 1968 in the sum of $6,000 for a term of one year, the second on June 6, 1968 in the sum of $8,000 for a term of three months and the third on July 24, 1968 in the sum of $2,800 for a term of two months.
Mr. Wilbur Ledoux died on August 26, 1968 at which time he owed the bank about $30,000, insured by various companies. The face amount of three certificates of insurance issued by defendant and in effect was $16,800. On receiving notice of the death of Mr. Ledoux, the defendant tendered to the plaintiffs two drafts, one in the sum of $6,000, which was accepted, and the other in the sum of $4,000, which was refused. Defendant contends the benefits are limited to $10,000 under the limitation in the group policy.
The first issue is whether the $10,000 limitation, which appears in the group policy held by the bank but does not appear in the certificates of insurance issued at the time of each loan, is a part of the contract between the parties. The pertinent facts show that the certificates of insurance set forth the name of the insured, the name of the bank, the amount of insurance issued at the time of each loan, the effective dates of the coverage and then state in part:
"This is to certify that the person named above, who is indebted to the creditor, also named above, is insured under and subject to all of the terms and conditions of group policies (then follows a description of the group policy in question) * * *"
* * * * * *
"The group policies are in the possession of the policy holder and may be inspected by the insured at any time during business hours at the office of the policy holder."
As a general rule, any application, rider, endorsement, or other paper becomes a part of a contract of insurance if sufficiently attached or referred to in the documents concerned, 43 Am.Jur.2d 345-350, Verbo Insurance, Sections 283, 287; 44 C.J.S. Verbo Insurance, § 301, pp. 1209-1214. However, the manner in which the document is attached or referred to must clearly indicate an intention of the parties that it and the policy are parts of the same contract and must be construed together, Annotation 38 A.L.R. 1520, et seq. These general rules are followed in Louisiana cases dealing with certificates which refer to group policies of insurance, Austin v. Metropolitan Life Insurance Company, 142 So. 337 (La.App. 2d Cir. 1932); Loubat v. Audubon Life Insurance Company, 248 La. 183, 177 So.2d 281 (1965); Finch v. Baton Rouge Production Credit Association, 154 So.2d 60 (La.App. 1st Cir. 1963).
Under these principles of law, it is clear that both the certificate of insurance and the group policy in the present case *735 must be construed together to determine the contract between the parties. The certificate specifically refers to the group policy and expressly states that the coverage is subject to the terms and conditions of the group policy. Hence, the $10,000 limitation is part of the contract intended and limits the amount of insurance on any one debtor at any one time to $10,000.
The next issue is whether the defendant insurer is barred by (1) estoppel, (2) waiver or (3) ratification to urge as a defense the $10,000 limitation in its group policy. These terms, particularly waiver and estoppel, are often used interchangeably but there are important distinctions pertinent to the present case.
Equitable estoppel (as distinguished from promissory estoppel with which we are not concerned here) arises when one by his actions, or by his silence when he ought to speak, induces another to believe certain facts and the other relies on these facts to his prejudice. In the law of agency, estoppel does not require knowledge or consent by the principal as to the unauthorized acts of his agent. See the comment, Waiver and Estoppel in Louisiana Insurance Law, 22 La.L.Rev. 202 at pages 208-211 and the authorities cited.
Waiver has been generally defined as the intentional relinquishment of a known existing legal right. Waiver is conventional and therefore both knowledge of the facts and an intention to waive, either express or implied, are necessary. Again, see the comment, Waiver and Estoppel in Louisiana Insurance Law, 22 La.L.Rev. 202-208 and authorities cited.
Ratification, in the law of agency, is the adoption or confirmation by one person of an act performed on his behalf by another without authority. The substance of the doctrine is confirmation after conduct, amounting to a substitute for prior authority. It is similar to waiver in that knowledge of the facts, consent and intention, either express or implied, are necessary. However, in most cases, unlike waiver, ratification also requires that the principal receive some benefit or consideration from the unauthorized act of his agent. See 2 C.J.S. Verbo Agency, §§ 34, 42, 43 and 44, p. 1068.
These distinctions between estoppel, waiver and ratification are important in the present case because many authorities, including our own Supreme Court, hold that the doctrines of estoppel and waiver are limited to the insurer's rights, under conditions of the policy to avoid liability. These authorities state that estoppel and waiver cannot be used to extend or enlarge coverage beyond that set forth in the policy. See Steers v. Home Insurance Company, 38 La.Ann. 952 (1886); H. D. Foote Lumber Company v. Svea Fire & Insurance Company, 179 La. 779, 155 So. 22 (1934); Jacobs v. Metropolitan Life Insurance, 39 So.2d 346 (La.Orl.App.1949); Loubat v. Audubon Life Insurance Company, 248 La. 183, 177 So.2d 281 (1965); C. E. Carnes & Company v. Employers' Liability Assurance Corp., 101 F.2d 739 (5th Cir. 1939); 43 Am.Jur.2d 983, Verbo Insurance, Section 1058; Comment, Waiver and Estoppel in Louisiana Insurance Law, 22 La.L.Rev. 202.
In the present case, the limitation of liability to $10,000 on the life of any one debtor at any one time is a statement of coverage, rather than a right granted the insurer to avoid liability. The full text of the provision at issue reads as follows:
"Each debtor insured hereunder shall be insured concurrently with the making of the loan in connection with which the insurance is granted and shall be insured for an amount equal to the original amount of his indebtedness, unless the initial indebtedness exceeds $10,000. If the initial indebtedness exceeds $10,000, the amount of insurance shall be limited to $10,000. In no event, however, shall the aggregate amount of insurance under this Policy on the life of any one debtor exceed at any time $10,000."
*736 Under the authorities cited above, we are constrained to hold that the doctrines of estoppel and waiver cannot be urged by the plaintiff to extend coverage beyond the limitation of $10,000 stated in the policy. However, these authorities speak only of estoppel and waiver. They do not say the doctrine of ratification cannot be used to extend insurance coverage beyond that stated in the policy. In the present case, there was ratification by the insurer of the unauthorized acts of its agents. On this basis the authorities cited are distinguishable.
Let us now examine in more detail the facts showing ratification. As stated above, the evidence reveals that defendant's agents at the bank issued to Mr. Ledoux three certificates of credit life insurance. The first on March 7, 1968 in the sum of $6,000 was for a term of one year, the second on June 6, 1968 in the sum of $8,000 for a term of three months, and the third on July 24, 1968 in the sum of $2,800 for a term of two months. Defendant's agents testified, without contradiction, that at the end of each month they sent to defendant's home office copies of the certificates of insurance issued for defendant during that month, together with a deposit slip showing they had deposited in the Basile State Bank to defendant's credit its share of the premiums, which is 40%. Hence, the facts show that when Mr. Ledoux died on August 26, 1968, defendant had prior notice for about 57 days (July 1 until August 26) that the second certificate in the sum of $8,000 had been issued bringing the total amount of insurance on Mr. Ledoux's life to the sum of $14,000. And, the defendant had 25 days prior notice (August 1 until August 26) that the third certificate in the sum of $2,800 had been issued, bringing the total amount of insurance on the life of Mr. Ledoux to the sum of $16,800. Defendant made no effort to repudiate the actions of its agents nor did they return the premiums.
Corroborating this testimony, the evidence shows that in at least two other instances defendant had received certificates and collected and retained premiums on coverage substantially in excess of $10,000. Defendant introduced no testimony to show that any attempt whatever was made by its office to check on the amount of insurance in effect on the life of any one debtor at any one time or to return any unearned premiums.
The doctrine of ratification is firmly established in our civil law, LSA-C.C. Articles 1840 and 3010; Planiol Vol. 2, Section 2255. Many cases in our jurisprudence hold that the unauthorized contract of the agent is ratified by the principal who, with knowledge of such contract, does not repudiate it within a reasonable time but instead accepts and retains the benefits. Bolding v. Eason Oil Company, 248 La. 269, 178 So.2d 246; Gallioto v. Trapani, 238 La. 625, 116 So.2d 273; American Guaranty Company v. Sunset Realty & Planning Company, 208 La. 772, 23 So.2d 409; Collins v. Huck, 161 La. 641, 109 So. 341; Succession of Gilmore, 154 La. 105, 97 So. 330.
In the present case the defendant had actual knowledge, through receipt of the certificates of insurance, for a sufficient period of time to afford it a reasonable opportunity to repudiate the unauthorized acts of its agents. However, it made no such repudiation. Instead, it accepted and retained the benefits of the unauthorized acts. Under the circumstances, the defendant insurer ratified the issuance of credit life insurance on the life of Mr. Ledoux totaling $16,800.
The next issue is whether defendant's third party demand against its agents is barred by the ratification. In addition to the facts stated above, the evidence shows that when defendant's representative, Mr. Wilson, first talked to the bank president, Mr. Bacon, they discussed the question of who would check to see that the certificates issued conformed to the group policy. Mr. Bacon testified he specifically told Mr. Wilson that the bank filed its notes according *737 to their due dates and it would be a considerable inconvenience to search the records at the time of each new loan to determine how much life insurance had been issued on this particular debtor. Hence, Mr. Bacon says the understanding was that he could rely on the defendant to advise him in the event the limitation of $10,000 was exceeded. The defendant introduced no testimony to contradict Mr. Bacon.
The general theory of ratification of the unauthorized acts of an agent is that the principal, with full knowledge of the facts, consents to the unauthorized actions and adopts the contract as if it had been previously authorized. Chandler & Chandler v. City of Shreveport, 162 So. 437 (La.App.). There are a number of Louisiana cases holding that where the principal ratifies the unauthorized acts of its agent, such ratification discharges the agent from personal responsibility, Raymond v. Palmer, 41 La.Ann. 425, 6 So. 692; Lafitte, Dufileho & Co. v. Godchaux, 35 La.Ann. 1161; Featherston v. Graham & Buckingham, 17 La.Ann. 42; Beau v. Drew, 15 La.Ann. 461.
In Manufacturers Casualty Insurance Company v. Martin-Lebreton Insurance Agency, 242 F.2d 951 (5th Cir.) It might appear at first glance that the court took a somewhat contrary view. However, a close study of the decision shows that it was an appeal from a summary judgment holding the principal's ratification absolved the agent from personal liability, where there had been no immediate repudiation of the unauthorized acts. Essentially, the appellate court decision held that more than a mere failure of immediate repudiation was necessary. The case was returned to the district court for trial on the merits to show whether there was a reasonable time for the principal to repudiate the acts of the agent and also for evidence going to the issue of whether the agent had in bad faith violated its fiduciary relationship to the principal. In our view, this decision does not change the cited Louisiana jurisprudence that where there had been a clear ratification the agent is relieved of personal liability.
In the present case the facts clearly show ratification. The agent is not personally liable and hence defendant's third party demand must be rejected.
The final issue is whether the defendant is liable under LSA-R.S. 22:656 for penalties. In view of the novelty and complexity of the legal issues presented, we do not think the defendant was arbitrary or capricious in failing to pay the amount claimed. The judgment appealed will be amended to exclude penalties.
For the reasons assigned, the judgment appealed is amended so as to exclude penalties. Otherwise, the judgment is affirmed. All costs of this appeal are assessed against the defendant appellant.
Amended and affirmed.

ON APPLICATION FOR REHEARING
En Banc. Rehearing denied.
MILLER, Judge.
Since I was not on the panel that heard this case, this is my first opportunity to express an opinion. I vote to deny the application for rehearing for reasons other than those stated in our opinion.
The issue is whether the $10,000 limitation, which appears in the group policy held by the bank but does not appear in the certificate of insurance issued to Wilbur Ledoux at the time of each loan, is a part of the contract between the parties.
The certificate of insurance is a one sheet document, printed on the front and back. On the front side, at the top, are spaces to set forth the name of the insured, the name of the bank, the effective dates of coverage, the face value of the insurance coverage, the amount of the premium and whether the insurance is decreasing *738 or level term. These facts are filled in by the bank, as defendant's agent, and stand out in bold relief as opposed to the balance of the certificate which, among other things, states in single spaced type that the certificate is subject to all the terms and conditions of the group policy. On the back side, in a concluding sentence, the certificate notes that the group policy is on file with the bank and may be inspected during business hours.
As a general rule, Louisiana Courts have held the certificate and group policy are to be construed together as part of the same contract. See Austin v. Metropolitan Life Insurance Company, 142 So. 337 (La.App. 2 Cir. 1932), Loubat v. Audubon Life Insurance Company, 248 La. 183, 177 So.2d 281 (1965), and Finch v. Baton Rouge Production Credit Association, 154 So.2d 60 (La.App. 1 Cir. 1963).
Does this mean that all certificates and group policies must be construed together regardless of the manner in which they are written? I think not.
Oft times in an effort to follow a successive line of cases we lose sight of the origin of these decisions, the codal articles on contracts and obligations. It is then that a return to the Code proves both refreshing and rewarding. Such is the case here.
Civil Code Article 1797 states that consent is a "mere operation of the mind" and that it must be evinced in such a manner "that shall cause it to be understood by the other parties to the contract." Civil Code Article 1798 observes that "the will of both parties must unite on the same point."
In this case decedent Wilbur Ledoux was "sold" $16,800 worth of life insurance. By this I mean the evidence shows that defendant's agent, the bank, actively solicited these insurance contracts at defendant's urging. Ledoux paid for $16,800 in life insurance coverage and defendant collected the premiums on $16,800 worth of life insurance coverage. The certificates given to Ledoux showed he was covered by $16,800 in life insurance. No mention was made on the certificates that coverage was limited to $10,000 in the aggregate. Neither defendant nor its agent, the bank, ever made any mention to Ledoux, directly or indirectly, of the $10,000 limitation. The premiums on the full $16,800 were retained by defendant in spite of the fact that defendant had ample time to return the excess and it failed to do so. Moreover the evidence shows that in at least two other instances, at the time of this dispute, defendant had issued certificates and collected and retained premiums on coverage substantially in excess of $10,000. In the instant case it is clear that the overt actions of all parties contemplated $16,800 in life insurance coverage.
Defendant's intention that the aggregate coverage be limited to $10,000 should have been evidence in a conspicuous fashion on the certificate itself. It goes without saying the amount of coverage in any insurance policy is the most important part of the contract. Defendant's failure to put this coverage limitation on the face of the certificate so as to show the effect on the face value was negligence at the very least.
Civil Code Article 1958 speaks to this problem with clarity, to-wit:
"But if the doubt or obscurity arise for the want of necessary explanation which one of the parties ought to have given, or from any other negligence or fault of his, the construction most favorable to the other party shall be adopted, whether he be obligor or obligee."
In my opinion the confusion on the question of coverage was caused solely by the negligence of defendant in failing to give notice of this coverage limitation by according it a prominent place on the certificate given decedent. Decedent's $16,800 coverage was in effect the moment decedent received the certificate of insurance.
I agree that this negligence was compounded by defendant's failure to repudiate *739 this "excess" coverage by promptly returning the "excess" premiums.
The result reached in our original decision is correct. The application for rehearing is properly denied.