857 So.2d 606 (2003)
NORTH AMERICAN SPECIALTY INSURANCE COMPANY
v.
EMPLOYERS REINSURANCE CORPORATION, Brunson Bonding and Insurance Agency, Inc., and T. Reid Methvin.
No. 2002 CA 2649.
Court of Appeal of Louisiana, First Circuit.
September 26, 2003.
*608 Albert Dale Clary, Jennifer J. Vosburg, Jamie Hurst Watts, Baton Rouge, for Plaintiff-Appellant, North American Specialty Ins. Co.
Joseph L. McReynolds, New Orleans, for Defendants-Appellees, Employers Reinsurance Corp. and Brunson Bonding & Ins. Agency, Inc.
Before: CARTER, C.J., PARRO, and GUIDRY, JJ.
CARTER, C.J.
This appeal arises out of an action originally filed by North American Specialty Insurance Company (NAS) alleging that T. Reid Methvin (Methvin), an employee of Brunson Bonding & Insurance Agency, Inc. (Brunson), had issued numerous construction bonds without obtaining prior approval from NAS as required by an agency agreement between NAS and Brunson. After learning about the unauthorized bonds, NAS accepted and retained payment of the premiums from Brunson on all of the unauthorized bonds issued by Methvin. Thereafter, approximately twelve of the unauthorized bonds resulted in defaults, allegedly causing significant losses when NAS was forced to pay claims on the defaulted bonds.
NAS brought suit on June 27, 1988, against Brunson, Methvin, and Brunson's errors and omissions insurer, Employers Reinsurance Corporation (Employers). The facts were uncontroverted; however, the legal effect of the facts was sharply disputed. The parties submitted depositions, exhibits, and briefs to the trial court on the issue of liability for the first part of a bifurcated trial. Approximately fourteen years after the suit was filed, the trial court rendered judgment on May 15, 2002, in favor of Brunson and Employers.[1] The trial court held that NAS had tacitly ratified the unauthorized acts of Methvin by accepting the premiums on the bonds from Brunson with full knowledge of Methvin's actions.
NAS filed a motion for new trial on the ratification issue, but the motion was denied.[2] NAS's petition was dismissed, and the judgment was designated as final for purposes of appeal. NAS seeks reversal on appeal, arguing that the trial court committed legal error when it held that acceptance of the premiums for the unauthorized bonds amounted to a tacit ratification of Methvin's unauthorized actions. NAS also urges that the trial court erred in concluding that NAS's tacit ratification had exonerated Brunson and Employer's from liability for Methvin's unauthorized acts. For the following reasons, we affirm the trial court's judgment.
In its extensive written reasons for judgment, the trial court set forth a recitation of the facts, which we adopt herein as our own:
T. Reid Methvin, "Methvin", was an employee of Brunson Boding (sic) and Insurance Agency, Inc., "Brunson", which was an agent for North American Specialty Insurance Company, "NAS". *609 NAS was engaged in the business of underwriting performance or construction bonds. As such NAS had entered into an agency relationship with Brunson to issue the performance bonds providing Brunson with the NAS forms and materials. As part of the agency agreement, Brunson was to seek prior approval from NAS before writing any bonds and once approval was obtained Brunson was to issue the bond, collect the premium and remit the premium minus Brunson's fee to NAS. It is undisputed that during the course of the relationship between NAS and Brunson, that (sic) Methvin issued numerous unauthorized performance bonds. After it was discovered that unauthorized bonds had been issued, an audit was performed in an attempt to determine the number of the unauthorized bonds issued. Any premiums collected on these bonds were remitted to NAS.
A court of appeal may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. Schultz v. Hill, 02-0835, p. 4 (La.App. 1 Cir. 2/14/03), 840 So.2d 641, 643. However, a legal error can occur when a trial court applies incorrect principles of law and such errors are prejudicial. Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights. When such a prejudicial error of law skews the trial court's finding of a material issue of fact and causes it to pretermit other issues, the appellate court is required, if it can, to render judgment on the record by applying the correct law and determining the essential material facts de novo. Schultz, 840 So.2d at 644.
The trial court's legal conclusion that NAS had tacitly ratified the unauthorized acts of Brunson's employee by accepting the premiums on the unauthorized bonds is based on its application of LSA-C.C. art. 1843, which provides as follows:
Ratification is a declaration whereby a person gives his consent to an obligation incurred on his behalf by another without authority.
An express act of ratification must evidence the intention to be bound by the ratified obligation.
Tacit ratification results when a person, with knowledge of an obligation incurred on his behalf by another, accepts the benefit of that obligation. (Emphasis added.)
The trial court reviewed all of the evidence and concluded that NAS had full knowledge of Methvin's unauthorized issuance of the bonds. The trial court also found that NAS accepted the premiums in full from Brunson for all of the unauthorized bonds, under the same terms as if the bonds had been originally authorized. The trial court stressed the fact that NAS took no action to attempt to rescind the bonds or to notify or advise the purchasers of the bonds that Methvin was not authorized to issue the bonds. The trial court's ruling did not focus on the intent of NAS, because NAS did not expressly indicate its intent to ratify the unauthorized bonds. Instead, essential to the trial court's finding was the fact that NAS accepted the benefit of the premiums on all of the bonds after full knowledge that the bonds were issued without authority. Our review of the entire record on appeal convinces us that the trial court was not manifestly erroneous or clearly wrong in its factual conclusions. We also find no legal error in the trial court's application of the law to its factual conclusions.
An unauthorized act of an agent may be ratified by the subsequent action or inaction of the principal upon being apprised of the facts. Louisiana Consumer's League, Inc. v. City of Baton Rouge, *610 431 So.2d 35, 37 (La.App. 1 Cir.), writ denied, 435 So.2d 431 (La.1983). It is well settled that ratification amounts to a substitute for prior authority. Sunray Services, Inc. v. City of Minden, 29,260, p. 5 (La.App. 2 Cir. 2/28/97), 690 So.2d 970, 973, writ not considered, 97-1140 (La.6/20/97), 695 So.2d 1343; Ledoux v. Old Republic Life Insurance Company, 233 So.2d 731, 735 (La.App. 3 Cir.), writ refused, 256 La. 372, 236 So.2d 501 (1970). In Ledoux, 233 So.2d at 736, an insurer was held to have tacitly ratified the unauthorized acts of its agents when the insurer made no attempt to repudiate the authority of the agents nor to return the premiums earned for the issuance of insurance coverage in excess of the agents' authority. To find ratification of an unauthorized act, the facts must indicate a clear and absolute intent to ratify the act, and no intent will be inferred when the alleged ratification can be explained otherwise. Ratification will occur when the principal, knowing of the obligation, does not repudiate it, but accepts its benefits. Bamber Contractors, Inc. v. Morrison Engineering & Contracting Co., Inc., 385 So.2d 327, 331 (La.App. 1 Cir.1980). Further, when a principal (such as NAS) ratifies the unauthorized acts of its agent, the ratification discharges the agent from personal liability. Ledoux, 233 So.2d at 737.
NAS argues that its acceptance of the premiums can be otherwise explained as an attempt to mitigate its losses and that it could not rescind the bonds once they had been issued. We disagree that NAS's acceptance of the premiums was a mitigation of damages. Not all of the unauthorized bonds resulted in losses. When NAS accepted the premiums for the bonds, it did not know if any of the bonds would result in defaults. If a default had never occurred on any of the bonds, then obviously NAS would not have suffered any losses. The premium for the bond is simply the price paid for the bond. The premium cannot be considered a mitigation of damages, because it is accepted before any defaults are anticipated or actually occur.
We find that the acceptance and retention of the premiums for all of the unauthorized bonds, including the bonds that did not result in losses from defaults, clearly evidences an acceptance of a benefit, and therefore, NAS's actions constitute a tacit ratification of the terms and obligations of the unauthorized bonds. NAS accepted the premiums in the same manner and in the same amount as if they had originally approved and authorized the bonds. NAS was willing to knowingly accept the full benefit of the premiums; therefore, NAS must be willing to accept the full liability from the risk that some of the bonds would result in losses. We also find it significant that the deposition testimony of NAS's two corporate officers clearly indicates that NAS accepted an additional benefit in the form of contractor indemnity agreements for each of the unauthorized bonds. Thus, NAS had a remedy available to it by enforcing the indemnity agreements to attempt to recover its losses, just as it would have done had the bonds been originally approved and authorized.
NAS argues that it had no choice but to accept the premiums, because it could not lawfully rescind the bonds once they had been issued. However, we believe that NAS did have other options if its goal was to repudiate the authority of Brunson's employee. See Town of Ponchatoula v. National Indemnity Co., 395 So.2d 401, 402 (La.App. 1 Cir.1981), where a bonding company took reasonable steps to afford notice that some of its bonds had been forged, by publishing the pertinent information in various newspapers. NAS *611 could have opted to advise or notify the innocent bond purchasers that the bonds had been issued without authority.[3] Alternatively, NAS could have repudiated the unauthorized acts, refused to accept the benefit of the premiums and indemnity agreements for the unauthorized bonds, and then sought recourse against its agent, while still honoring the obligations in the bonds. Instead, NAS chose to accept and retain the benefits with full knowledge that the bonds had been issued without authority. This voluntary acquiescence in Methvin's unauthorized conduct and acceptance of the benefits flowing from the issuance of the bonds leads us to the conclusion that NAS tacitly ratified the unauthorized bonds as if they had been originally approved and authorized.
It is evident that NAS took a calculated risk that the unauthorized bonds would not result in defaults. NAS retained the benefits and advantages from the issuance of the unauthorized bonds. After knowingly accepting the benefits, NAS cannot now attempt to repudiate only the unauthorized bonds that resulted in losses. See Francis v. Bartlett, 121 So.2d 18, 21 (La.App. 2 Cir.1960). In other words, NAS cannot hold its agent liable for the unauthorized bonds that resulted in losses while at the same time receive benefits in the form of premiums and indemnity agreements. The tacit ratification legally bound NAS as if the bonds were originally issued with its full authority. NAS's action against its agent is therefore barred, because the agent is no longer responsible after the ratification. See Ledoux, 233 So.2d at 737.
We affirm the trial court's judgment in all respects. Costs of this appeal are to be paid by plaintiff-appellant, North American Specialty Insurance Company (NAS).
AFFIRMED.
NOTES
[1] The record reflects that service was requested for Methvin, but it is unclear whether he was actually served. Methvin never filed an answer, and the case proceeded to trial against the other two named defendants, Brunson and Employers.
[2] The motion for new trial was granted in part to delete a portion of the decree ordering that Brunson was entitled to unpaid commissions due on premiums previously collected and paid to NAS. However, that portion of the judgment is not at issue in this appeal.
[3] The record reflects that NAS actually took this approach on one of the unauthorized bonds, and the bond purchaser chose to return the unauthorized bond and to purchase a replacement bond.