(117 So. 562)

No. 28553.

## Succession of FERRILL.

April 9, 1928. Rehearing Denied June 4, 1928.

J. J. Ritayik and W. O. Hart, both of New Orleans, for appellants Beulah Ferrill and Dr. F. B. Ferrill.

Borah, Himel, Bloch & Borah, of Franklin, for appellees.

THOMPSON, J. Benjamin Franklin Ferrill died in this city August 17, 1926, leaving a widow by a second marriage and eight major children of a previous marriage.

There were no issue of the second marriage.

By his last will (olographic) he gave two-thirds of all of his personal property to his children to be divided equally among them.

The disposable one-third he gave to his unmarried daughter Beulah and his surviving widow; that is to say, he gave one-sixth of the whole of his personal property to each of the last two mentioned legatees.

The widow was named executrix, and one of his sons and one son-in-law as executors. The will was probated, and the executrix and executors qualified.

The inventory taken at the time showed personal property, consisting of corporate stocks, bonds, notes, and jewelry, amounting to $58,826.14; cash in bank, $6,135.56; and real estate in this city, $8,250.00; making a total of $73,211.70.

All of the stocks and bonds bearing a date anterior to the second marriage (March 21, 1919) were inventoried as the separate property of the decedent, and all of the stocks and bonds dated subsequently to the second marriage were inventoried as community property of the second marriage, as was also the real estate situated in this city.

Some of the heirs were dissatisfied with the classification of any of the property as belonging to the community, their contention being that all of the property belonged to the separate estate of their father, even the real estate in this city, which was purchased some seven years after the second marriage.

The differences between the heirs and their stepmother were finally adjusted by agreement and compromise, by which all of the personal property shown in what is called a "tentative" inventory should be regarded as the separate property of the decedent, and to which was added $6,300 for value of stocks and bonds standing in the name of the widow, and $1,000 in cash which was in the savings bank to her credit.

The real estate in this city was recognized as community property and it was agreed that the widow should be placed in possession as owner of one half and as usufructuary of the other half. The widow was also allowed to retain six shares of the stock of the D. H. Holmes Company of the par value of $600, one motor lien certificate for $500, and one gold locket valued at $20.

It was further agreed that, after all debts and costs of the estate were paid from the proceeds of the personal property, the net balance should be distributed among the legatees as provided in the will; that is to say, one-eighth of two-thirds to each of the heirs, one-sixth to Miss Beulah as an extra or advance portion, and one-sixth to the widow.

In the perfection of this agreement and compromise, all of the heirs were represented by C. H. Ferrill and R. C. Hauenstein, except Frank B. Ferrill, who signed in his own proper person. The agreement was dated October 9, 1926.

Thereafter, on November 12, 1926, the executrix and executors filed a final account, praying that the same be approved, and that the funds be distributed in accordance with the will.

The account showed the total assets of the estate, as fixed by the compromise, to be $73,211.70, and debts and legal expenses amounting to $4,567.84.

To this account oppositions were filed by Miss Beulah Ferrill and by Frank B. Ferrill.

In her opposition Miss Beulah alleged that the inventory did not embrace all of the property and assets of the estate; that there was considerable amount of stocks, bonds, cash, automobile, jewelry, and household effects, and particularly $12,000 in Liberty bonds, that have not been inventoried or accounted for; that the real estate, as shown in the inventory, forms, and is part of, the separate estate of her father; that the stocks and bonds claimed by the widow also form a part and is the separate estate of her father. It was also alleged that the claims and debts shown in the account were not due and should be stricken therefrom.

The opposition of Frank B. Ferrill is substantially the same as that of Miss Beulah.

In answer to these oppositions, the executrix and executors allege that the debts listed in the account were due and owing as will be shown on the trial; and, as to the other contentions of opponents, it was alleged that all of the property was inventoried as the separate property of the decedent, in accordance with an act of agreement and compromise entered into between the widow and the heirs, with the exception of the real estate in New Orleans, and those stocks and bonds which were allotted to the widow.

It was further alleged that the said act of compromise has the effect of the thing adjudged among the parties, and cannot be collaterally attacked.

It was still further alleged that opponent F. B. Ferrill joined in and signed said act of compromise, and that opponent Miss Beulah Ferrill, with full knowledge, has ratified and confirmed said compromise, and that each of said opponents is now estopped and precluded from in any manner questioning the inventory and correctness thereof, which estoppel is specially pleaded.

On a trial, the account was approved and homologated, with the exception of a few small items which were reduced in amount. The demands of the opponents were otherwise rejected.

█ In so far as the opposition of F. B. Ferrill is concerned, it is sufficient to observe that he signed the act of compromise after having read the same and after having thoroughly discussed the matter with some of the other heirs. He does not allege, and there is no pretense, that he signed said act in error, or that any fraud or deception was practiced on him. His opposition is therefore without the least semblance of merit.

It is contended, on behalf of Miss Beulah Ferrill, that the compromise was made, and that the written act in her behalf was signed, without any written authority from her, and that, for the reason stated, the compromise is an absolute nullity as a whole, and is not binding on any of the heirs.

█ It is conceded that a compromise or transaction, such as here involved, is required to be in writing (C. C. art. 3071), and it has been said in one case at least (Phelps v. Hodge, 6 La. Ann. 528) that, when the compromise is "made by an agent, * * * the agency is so much a part of the contract that there should be as high, certain, and indisputable evidence of the agency as of the contract itself."

█ We find it unnecessary, however, to decide the question as to whether the authority to make the compromise should be in writing, for whatever may be the correct rule as to that, the fact remains that C. H. Ferrill, the opponent's brother and her brother-in-law, R. C. Hauenstein, both testified that they were authorized to represent Miss Beulah, and she practically admitted on the stand that she had so authorized them. We quote a part of her testimony:

"Q. Didn't you understand that your brother (Cicero H. Ferrill) was representing all the heirs? A. Yes.

"Q. And you knew then that he was representing you? A. I thought he was at the time.

"Q. You expected him to represent you, did you not? A. Yes.

"Q. (By the Court). If he had asked you to give him authority in writing, would you have given him written authority as well as verbal authority? A. Yes; I would have given him written authority at that time, I would."

In view of this admission, it is immaterial whether the authority to make the compromise was in writing or not.

Moreover, in addition to the admission that her brother was authorized to represent her in making the compromise, the opponent has expressly ratified and confirmed the acts of her said brother.

After the act of compromise was signed on behalf of all of the heirs, including Miss Beu-

lah, and by the widow, with the exception of Dr. Ferrill, Miss Beulah, in company with her brother C. H. Ferrill and her brother-in-law, Hauenstein, went to the office of Dr. Ferrill to obtain his signature to the instrument.

The details of the settlement were thoroughly discussed by her two brothers and her brother-in-law in her presence, and at some length, after which the opponent expressed her unqualified satisfaction and approval. On their way from Dr. Ferrill's office to the hotel they met up with Mr. Borah, one of the attorneys for the executors, and she again expressed herself as being satisfied with the agreement, and said that she was glad that the whole matter had been settled.

At the hotel the settlement was gone over again, and it was explained to Miss Beulah approximately what she would receive in the settlement, and she again expressed herself as being satisfied.

The reading of the record leaves no doubt on the mind of the court that no information concerning the settlement was kept from her, and that she was fully informed of her rights and of all of the material details of the settlement.

We said in Da Ponte v. Ogden, 161 La. 378, 108 So. 777, that:

"There is no principle of law and jurisprudence better settled and more uniformly adhered to than the one to the effect that the acts of an agent, even if unauthorized and without the scope of his mandate, or in violation of the mandate, are regarded and considered as ratified by the principal by acquiescence, if, after full knowledge of the same, he does not repudiate them."

The facts in the instant case, made the basis for the plea of estoppel, are much stronger than in the cited case.

■ Here the plea is not based on acquiescence, by mere silence, after being informed of the transaction made on behalf of opponent, but upon full knowledge of the negotiations leading up to and culminating in the written

act of compromise, of active participation in such negotiations, and by expressed ratification and affirmance after said compromise had been completed.

■ Such facts as a predicate for the plea of estoppel are provable by parol testimony, even though written evidence of authority to make the compromise was required under the law. Bradford-Kennedy Co. v. Brown, 152 La. 30, 92 So. 723.

From all that appears from the record before us, the heirs received the advantage in the settlement. It is questionable but that a large portion of the personal property was in fact community property of the second marriage. If that be true, then the widow, for the surrender of her half, did not, in the compromise, receive an equivalent. The real estate in this city was acquired during the community, and formed an asset of the community. The recognition of the widow's ownership to one-half of the said real estate was no surrender on the part of the heirs, for the law fixed the status of that property. The widow was not entitled to the usufruct of her husband's half of the real estate, but the concession to her of such usufruct was one of the considerations which induced her to surrender her community interest in the personal property.

None of the heirs are presently complaining of the compromise except Miss Beulah and her brother Dr. Ferrill and, from all that appears, Miss Beulah has the least cause for complaint. The compromise largely increased the amount of the personal property comprising the separate estate, and from which she is to receive, under the will, one-sixth of the whole as an extra portion, in addition to one-eighth of two-thirds, and, besides, all of the real estate situated in the state of Mississippi in full ownership.

As appropriate to this litigation, we quote what Corpus Juris has to say in volume 12, p. 322:

"Compromises having for their object the settlement of family difficulties or controversies are favored at law and in equity if at all reasonable. The termination of such controversies is considered a valid and sufficient consideration for the agreement, and the court will go further to sustain it than it would under ordinary circumstances."

The judgment appealed from is therefore affirmed.