116 So.2d 273

Luke GALLIOTO

v.

James J. TRAPANI et al.

No. 42587.

Dec. 14, 1959.

William M. Lucas, Jr., New Orleans, for plaintiff and appellant.

Byrnes & Wallace, New Orleans, for defendants and appellees.

SIMON, Justice.

This is a suit for the return of a deposit under an agreement to purchase a lease.

Defendant James Cartee, who was in the bar and restaurant business at Star Drive Inn, 1605 Airline Highway, Jefferson Parish, Louisiana, engaged the services of defendants Trapani-Landview, real estate brokers, to secure a purchaser for the business. As a result of their endeavors, on November 17, 1953, plaintiff Luke Gallioto signed an agreement to purchase the business for the sum of $12,000. The agreement provided for the sale to be consummated two days later, the transfer to be "subject to the bulk sales law." Simultaneously with the execution thereof, Gallioto deposited with the realtor $3,500. Immediately upon receipt of the $3,500, and in the presence of Gallioto, the realtor issued a check to Cartee in the amount of $1,000 which was to represent payment of the merchandize then on hand in the business establishment. Significantly, Gallioto made no objection or protest to this payment.

On November 18, 1953, Gallioto went into possession of the premises and began operation of the business despite the fact that the act of sale, pursuant to the bulk sales law, had not been authentically ex-

ecuted. He remained in possession and operated the business until November 24, 1953, at which time a creditor of Cartee instituted foreclosure proceedings against Cartee and pursuant thereto obtained an order for the seizure of the entire business. Gallioto was able to negotiate with the attorney for the seizing creditor and as a result obtained a release of part of the property from the seizure and was accordingly allowed to remove three truckloads of the stock in trade and merchandise.

On February 10, 1954, Gallioto instituted suit against James J. Trapani and Samuel T. Trapani, co-partners of Trapani-Landview Realtors, the London Guarantee and Accident Company, Ltd., surety for Trapani-Landview Realtors, and James Cartee, the vendor, for the return of the $3,500 deposit.

For answer James J. Trapani and Samuel T. Trapani alleged that $1,000 was paid by check to Cartee out of the initial deposit of $3,500 at the request of and in the presence of Gallioto. They thereupon tendered the balance held by them, the sum of $2,500 in the registry of the court for eventual payment to the rightful owner.

London Guarantee and Accident Company, Ltd., for lack of sufficient information to warrant belief, denied the allegations of plaintiff's petition and prayed for the dismissal of plaintiff's suit.

Cartee filed exceptions of no right or cause of action and, without abandoning these exceptions, answered by denying any interest in connection with the deposit of $3,500 made by Gallioto to Trapani-Landview Realtors. Assuming the position of plaintiff in reconvention, Cartee alleged that at the time Gallioto took possession of the premises there was approximately $1,000 in stock on the business premises; that during the period of the latter's operation of the business, Gallioto grossed $1,200; that accordingly plaintiff is indebted to him in the sum of $2,200 less the $1,000 paid Cartee, or a net balance of $1,200 due and owing to him.

The exceptions of no right or cause of action were overruled and after trial on the merits judgment was rendered in favor of Gallioto against Cartee and James J. Trapani and Samuel T. Trapani, doing business as Trapani-Landview, in the sum of $2,500 (the amount deposited in the registry of the court), together with legal interest from date of judicial demand until paid and for all costs of the proceedings. Plaintiff's suit against the London Guarantee and Accident Co., Ltd., and the reconventional demand of defendant, Cartee, were dismissed.

Plaintiff has appealed from that feature of the judgment denying him recovery of the total amount sued for. Defendants James J. Trapani and Samuel T. Trapani have alone answered this appeal.

Plaintiff contends that the district court erred in the following respects: (1) By rendering judgment in his favor for only $2,500 and at the same time rejecting Cartee's reconventional demand for the reason that only by recognition of said reconventional demand could a judgment of less than $3,500 be rendered; (2) In failing to rule specifically that Cartee had not sustained the burden of proof necessary to establish the reconventional demand; (3) By dismissing the action against the realtor's surety, London Guarantee and Accident Company, Ltd.

Presented for our determination is whether plaintiff is entitled to a refund of the $1,000 given to Cartee, and, if so, the party or parties liable therefor.

 It is manifest from the very nature of the transaction entered into in this instance that the realtor was acting in the capacity of a broker to bring the prospective purchaser and owner together and thus became their joint agent. Acting in the dual capacity the realtor was bound and obligated to treat them with equal fairness, fidelity and trust. In Martin v. Fontenot, La.App. 1 Cir., 27 So.2d 457, 458, the court therein observed:

"It is well settled that where a real estate broker acts in the capacity of an agent in bringing the owner of property and a prospective purchaser together in a completed contract of sale, the broker then becomes the agent of both parties. C.C. Art. 3016. Having thus become the agent of both parties, the obligations of the broker become dual in their nature, and require that he should observe the same fidelity toward all parties whom he represents, and not favor one more than another. C.C. Art. 3017.

"It is obvious from this legal situation in which the broker is placed by his dual obligation that he becomes a mere stakeholder of the deposit for the benefit of both the prospective purchaser and the owners of the property. The real parties in interest in a completed contract of sale are the prospective purchaser and the owners of the property. To require the broker to return the deposit made under the contract of sale without determining that the contract is not enforceable by either of the principals would subject the broker to the danger of a claim by one of the parties who might assert a claim under the contract affecting the deposit."

 Being Gallioto's agent, the realtors' action in transferring $1,000 of the deposit to Cartee was subject to express approval or ratification by Gallioto. The realtor and Cartee testified that Gallioto specifically authorized the transfer of this sum. On the other hand, Gallioto, while denying this

authorization, testified that he witnessed the transfer and made no objection or protest. The record further shows that Gallioto immediately took physical possession of the business and sold merchandise as owner and for his own account.

■ On the subject of ratification of an agent's acts we stated as follows in Succession of Gilmore, 154 La. 105, 97 So. 330, 331:

"An unauthorized contract of an agent is ratified by the principal, who, when notified of such contract, does not immediately repudiate it, but accepts the benefit arising under such contract. Ward v. Warfield, 3 La.Ann. 468; Flower v. Downs, 6 La.Ann. [538] 540; Szymanski v. Plassan, 20 La.Ann. [90] 92, 96 Am.Dec. 382; Mangum v. Bell, 20 La.Ann. 215; R. C.C. Art. 3010."

See also Fred G. Jones & Co. v. Sanford, 163 La. 799, 112 So. 726; and Andrus v. Eunice Band Mill Co., 190 La. 141, 182 So. 127.

Thus it is of no import that Gallioto expressly and specifically authorized the transfer of $1,000 to Cartee. Manifestly, he must be held to have approved and ratified the act of his agent by his failure to protest or immediately repudiate the transaction which occurred in his presence. This is further confirmed in view of the fact that he took immediate possession of and operated the business for his personal gain. After the ratification by Gallioto, the realtor retained the remaining $2,500 as a stakeholder to be ultimately paid to Gallioto in case of a failure by Cartee to perform his obligations under the agreement heretofore mentioned.

■ We are in accord with the ruling of the district judge in rendering judgment against the defendants in the sum of $2,-500. The judgment being limited to the amount held in the registry of the court, accordingly the surety company was relieved from any further liability, thus entitling it to a judgment in its favor of a dismissal of plaintiff's suit.

The judge below evidently reached the conclusion, after weighing the evidence, that Gallioto's operation of the business from November 18 to November 24 plus the value of merchandise removed by him after seizure of the business had an aggregate value of $1,000.

The record is noteworthy for its lack of business records on which to base a sound value of the merchandise on the premises at the time Gallioto assumed control, the amount of business done by him and the value of the merchandise which he later removed and converted to his use. Plaintiff testified that there was some merchandise on the premises belonging to the business on the day he took over and that he later purchased more merchandise which

were commingled with that already on hand. The parties to the purchase and sale agreement evidently made no inventory before Gallioto assumed control of the business although Harold Bevans, Sales Manager of F. Strauss & Son, wholesale liquor dealer, testified that he made an inventory of the merchandise after plaintiff had operated the business for one day. This inventory does not afford us any aid in resolving the issues. Plaintiff produced no proof whatsoever of any invoices showing purchases made by him, but he did admit that his gross sales for the period of his operation amounted to $516.50 and that he removed five or six hundred dollars' worth of merchandise after the seizure by his vendor's creditor.

We can only assume from plaintiff's testimony, as did the district judge, that there was at least $1,000 of merchandise on hand when he began operating the business, since he admits that the merchandise he removed from the premises together with his sales exceeded $1,000. It would have been a simple matter for him to produce invoices or other proof of purchase of merchandise after he began operations. The district judge evidently did not believe plaintiff had added to the stock on hand during the short time he operated the business and the lack of proof in the record leads us to the conclusion that no such purchases were made.

Plaintiff's failure to object to the $1,000 payment to Cartee, his lack of proof of the purchase of other merchandise, and his admission that the value of the merchandise he removed plus his gross sales exceeded $1,000 in value all indicate that he has received full value for and reimbursement of the $1,000 received by defendant Cartee.

■ Our learned brother below, concluding that Cartee had received $1,000 representing the full value of the merchandise on hand at the time plaintiff took possession and began operations, correctly dismissed Cartee's reconventional demand. To exact payment of a fully liquidated claim is repugnant to all legal precepts.

For the foregoing reasons the judgment appealed from is affirmed at appellant's cost.