BLANCHE, Judge.
This appeal arises out of a suit by plaintiff against defendant, Caruso-Simoneaux Agency, Inc., for premiums allegedly collected by that agency but not remitted to plaintiff. Named as additional defendants are Frank A. Caruso, Mrs. Connie Caruso and Ted V. Bagwell, who are all alleged to be personal sureties and liable to plaintiff in solido with the defendant agency for the amount of premiums owed plaintiff. Judgment was rendered in favor of plaintiff against Caruso-Simoneaux Agency, Inc., Mrs. Connie Caruso and Ted V. Bagwell, in solido. Judgment was also rendered in favor of defendant, Frank A. Caruso, dismissing plaintiff’s suit against him. Only defendant, Ted V. Bagwell, hereinafter referred to simply as “Bag-well,” appealed. For the reasons hereinafter set forth, we affirm.
The record reflects that as a prerequisite for Caruso-Simoneaux Agency, Inc., writing policies binding plaintiff and collecting on behalf of plaintiff initial and renewal premiums, plaintiff required an Agency Agreement to be executed by Caruso-Simoneaux Agency, Inc., and also required that the officers of said corporation execute a surety agreement appearing on the reverse side of the Agency Agreement. (Plaintiff Exhibit No. 1) This Agency Agreement is dated February 26, 1968. The evidence also shows that Mrs. Connie Caruso signed the Agency Agreement on behalf of the corporation and also signed not only her name to the surety agreement but also the names of Frank A. Caruso and Ted V. Bagwell. Plaintiff was unaware that the three individuals depicted as sureties had not personally signed their respective names until after suit was filed.
Mrs. Caruso testified by deposition, at which all parties were represented and at which Bagwell was present, that she telephoned Bagwell prior to signing his name to the surety agreement and obtained his authorization to do so. (Deposition of Mrs. Connie Caruso, pp. 32, 33) Mrs. Caruso testified that Bagwell knew that plaintiff and the other insurance companies to be represented by Caruso-Simoneaux Agency, Inc., wanted personal surety agreements from the officers of that agency. (Deposition, p. 37) Mrs. Caruso also testified that she personally discussed with Bagwell her signing of his name to the surety agreement in the latter part of 1968 or the early part of 1969. (Deposition, pp. 40, 41) She further testified that she had been signing Bagwell’s name for ten years and that she signed his name to the surety agreement so as to make the signature appear as a facsimile of Bagwell’s own signature. (Deposition, p. 45)
Mrs. Caruso was subpoenaed by counsel for plaintiff for the trial and was properly served with the subpoena, but she failed to appear in court. Counsel for plaintiff offered the deposition as the deposition of a witness whose appearance plaintiff had been unable to obtain by subpoena, in accordance with Louisiana Code of Civil Procedure Article 1428(3) (d).[1] (Record, pp. 152, 153, 188, 189) Counsel for Bagwell ob *324 jected to the introduction of the deposition (Record, pp. 153, 154), which objection was overruled by the trial judge. (Oral Reasons for Judgment, Record, p. 63; Record, p. 154)
Counsel for Bagwell contends in his first specification of error that the trial court erred in permitting the introduction of the deposition of Mrs. Connie Caruso, primarily for the reason that the deposition constituted testimony of a defendant (Mrs. Connie Caruso) which was used by plaintiff against a codefendant (Ted V. Bag-well), contrary to law.
In support of appellant’s position, counsel cites Edwards Brothers v. Berner, 154 La. 791, 98 So. 247 (1923); Rancatore v. Evans, 182 So.2d 102 (La.App. 4th Cir. 1966) ; Schwartz Supply Company v. Breen, 184 So. 228 (La.App. Orl.Cir. 1938); and Parks v. Hall, 179 So. 868 (La.App. 2nd Cir. 1937), annulled on other grounds, 189 La. 849, 181 So. 191, all for the proposition that the testimony of a defendant cross-examined by plaintiff cannot be used against any other defendant. Significantly, all of these cases with the exception of Rancatore antedate the adoption of the Louisiana Code of Civil Procedure, effective January 1, 1961. The rationale for the rule as set forth in some of the above-cited cases is as follows: The plaintiff and defendant being cross-examined by the plaintiff, although nominally opposed to one another, actually have a mutuality of interest due to the fact that both plaintiff and the defendant being cross-examined are opposed to the interests and legal position of the co-defendant. This latter co-defendant, against whom the testimony of the defendant being cross-examined was sought to be used, had no right to cross-examine his co-defendant who was actually aligned with the plaintiff. Therefore, in order to rebut the adverse testimony, he would have had to call the defendant previously cross-examined under direct examination, thus vouching for the credibility of this defendant. See, for example, Schwartz Supply Company v. Breen, 184 So. at 231, 232:
“ * * * Furthermore, the interest of Fishman was always, to some extent, aligned with the interest of plaintiff, though it is true that both Fishman and Breen were defendants, for Fishman really did not contest his liability to plaintiff, but both he and the plaintiff were at all times taking the same position and asserting that Breen should not be given credit for the proceeds of the check. Under such circumstances it was not proper to permit one defendant called by plaintiff under the statute to give testimony adversely affecting the other defendant; or, rather, it was not proper to consider such testimony as against the other defendant.
* * * * * *
“ * * * Often, as here, two defendants are as much opposed to each other as both are to the plaintiff, yet plaintiff would have us hold that, because of the statute, one of the defendants may be called as an adverse party and, under such examination, may be required to give testimony which may be availed of against the other defendant and yet the other defendant be not permitted to cross-examine the witness except by placing him on the stand himself. * * * ”
See, also, Rancatore v. Evans, 182 So.2d at 107:
“ * * * The interests of plaintiff and Evans [defendant whom plaintiff sought to cross-examine] regarding insurance protection are identical, and of course, it behooves each to show that the nature of the policy was misrepresented by Gohres [the co-defendant against whom plaintiff sought to use the testimony].”
*325 It is doubtful that this problem exists today in view of the expanded right of adverse litigants to cross-examine parties and representatives as provided by Louisiana Code of Civil Procedure Article 1634 as amended.
In any event we are satisfied that the deposition was properly admissible under the provisions of Louisiana Code of Civil Procedure Article 1428(3) (d). In this connection, we note that the appellate court in Schwartz Supply Company v. Breen, cited supra, concluded that when plaintiff used the testimony of a defendant to be considered against a co-defendant, plaintiff was in truth calling the defendant as a witness on plaintiff’s own behalf rather than as a defendant under cross-examination pursuant to a statutory precursor to Louisiana Code of Civil Procedure Article 1634:
“ * * * We think, therefore, that when plaintiff here used Fishman as a witness against Breen, it did so not in reality under the act, but, in truth, as a witness in its own behalf, and that, therefore, it was proper to permit counsel for Breen to cross-examine this witness.” (Schwartz Supply Company v. Breen, 184 So. at 232)
To hold otherwise would, under the particular facts of this case, unjustifiably hamper and hinder plaintiff in its attempt to prove its case against defendant Bag-well. Bagwell had full opportunity to cross-examine the witness, Mrs. Connie Caruso, at the taking of her deposition. Moreover, we note that while Bagwell and Mrs. Caruso were represented by different attorneys, both attorneys are members of the same law firm. When Mrs. Caruso failed to appear at the trial and when her deposition was offered in evidence as the testimony of a witness whose attendance plaintiff had been unable to obtain for the trial, counsel for Bagwell made no effort to obtain a continuance of the trial or to hold the matter open so as to permit the recalling of Mrs. Caruso for cross-examination.
Appellant assigns as his second specification of error the conclusion by the trial court^ that Bagwell ratified the signing of his signature to the surety agreement by Mrs. Caruso and the conclusion that Bag-well was liable to plaintiff. This specification of error is likewise without merit. The trial court made an express finding of fact that the evidence preponderated to the effect that Bagwell authorized Mrs. Caruso to sign his name to the contract and that his action both orally and in writing amounted to a ratification of such signing. (Oral Reasons for Judgment, Record, p. 63)
The record shows that on August 12, 1968, a letter was written by Jules Simon-eaux, Jr., representative of plaintiff, to Caruso-Simoneaux Agency, Inc., advising that agency of the suspension by plaintiff of that agency’s authority to conduct business on behalf of plaintiff pursuant to the Agency Agreement. (Plaintiff Exhibit 9-A, Record, p. 130) On the same date Jules Simoneaux, Jr., wrote a letter to each of three purported sureties on the Agency Agreement, Mrs. Connie Caruso, Mr. Frank Caruso and defendant-appellant, Mr. Ted V. Bagwell, which letters advised each of the three individuals of certain money which plaintiff claimed the defendant agency owed plaintiff and placing each of the individuals on notice thereof as “personal indemnitor.” (Plaintiff Exhibit Nos. 9-B through 9-D, Record, p. 130) [2]
*326 The record reflects that Jules Simoneaux, Jr., came to Baton Rouge on August 29, 1968, and met personally with Bagwell, at which meeting Mr. Simoneaux testified he advised Bagwell he was a personal in-demnitor (surety) in response to which Bagwell gave his personal verbal assurance that the money owed plaintiff would be paid, and to prove his personal ability to make such payments, gave Mr. Simoneaux a copy of (1) Bagwell’s personal- financial statement dated October 31, 1967 (Plaintiff Exhibit No. 11, Record, p. 135) ; (2) a July 31, 1968, balance sheet of Bagwell’s corporation (Plaintiff Exhibit No. 12, Record, p. 135); and (3) a certified public accountant opinion as to the financial status and verity of an October 31, 1967, balance sheet of said corporation (Plaintiff Exhibit No. 13, Record, p. 135).
At this meeting defendant Bagwell, according to Mr. Simoneaux (Record, p. 141), also dictated and signed a letter dated August 29, 1968, addressed to plaintiff to the attention of Mr. Simoneaux, containing the following statement:
“Also you have my personal assurance your company will be paid current by September 15, 1968.” (Plaintiff Exhibit No. 10)
Mr. Simoneaux explained that the purpose of his trip to Baton Rouge was to obtain from defendant agency plaintiff’s records and expirations, which Mr. Simon-eaux explained were valuable, marketable assets inasmuch as such information would be used to contact policyholders and collect renewal premiums. (Record, p. 151) It was only because Mr. Simoneaux received the personal assurance of defendant Bagwell as outlined above that he did not take possession of plaintiff’s records and expira-tions.
Mr. Jules Simoneaux, Sr., another representative of plaintiff, testified that he spoke on the telephone with defendant Bagwell in August of 1968, advising Bagwell he was a personal indemnitor, which Bagwell did not deny. (Record, pp. 99, 112, 114) Mr. Simoneaux further testified that a second set of demand letters was written to defendant agency and to the three purported individual sureties, which letters were dated October 28, 1968. (Plaintiff Exhibit Nos. 8-A through 8-D; Record, pp. 100, 101) [3]
Defendant Bagwell’s testimony, as evidenced from the record, is evasive and equivocal. He stated that he could not recall receiving either the August 12, 1968, letter or the October 28, 1968, letter. (Record, p. 161) He stated that Jules Simon-eaux, Jr., dictated the letter of August 29, 1968, to one of Bagwell’s secretaries and that Bagwell read and signed the letter as prepared by Jules Simoneaux, Jr. (Record, p. 173) He denied ever being advised by either Jules Simoneaux, Jr., or Jules Simon-eaux, Sr., that he was a personal indemnitor, denied any knowledge of the fact that Mrs. Caruso signed his name as a surety until the late fall of 1968, and expressly denied that Mrs. Caruso telephoned him at which time he authorized her to sign his name thereto. (Record, p. 166)
Suffice it to say that the trial judge, as evidenced by his Oral Reasons for Judgment, obviously resolved the irreconcilable testimony and concomitant questions of *327 credibility of witnesses in favor of plaintiff and against defendant Bagwell:
“ * * * The court finds from a preponderance of the evidence that Mr. Bag-well authorized Mrs. Caruso to sign his name to the contract. His failure to deny his signature after being called upon several times corroborates this evidence. In addition his actions, in the opinion of the court, amount to a ratification. His letter of August 29, 1968 amounts both to a ratification and a promise to pay ‘on my personal assurance.’ True that the letter is on agency stationary [sic] and is signed Ted V. Bagwell, President. The court, however, finds significance in the word ‘personal.’ ” (Oral Reasons for Judgment, Record, p. 63)
Our review of the record fails to disclose where the trial judge committed any manifest error with regard to these findings of fact.
It appears that the trial judge may well have erred to the extent that he concluded from his findings of fact that defendant Bagwell was liable to plaintiff on the basis of his verbal authorization to Mrs. Caruso to sign his name as surety on the Agency Agreement. In Surplus Underwriters, Inc. v. Simmons, 236 So.2d 530 (La.App. 4th Cir. 1970), the appellate court held that an agent must be specially authorized in writing to bind his or her principal to a contract of suretyship.
Defendant Bagwell cannot escape liability to plaintiff, however, for the reason that the trial judge’s further finding and conclusion that Bagwell’s actions upon being apprised of plaintiff’s contention that he was a surety amounted to a ratification of Mrs. Caruso’s signing defendant Bagwell’s name to the surety agreement.
Even where a particular type of obligation or the authority to execute such type of obligation as agent must be in writing, the obligor may, nevertheless, be held to have ratified the type of obligation by subsequent action or inaction upon being apprised of the facts. In Succession of Ferrill, 166 La. 479, 117 So. 562, the Louisiana Supreme Court held that whether the authority to sign a compromise agreement needs to be in writing, because a compromise itself must be in writing under Louisiana Civil Code Article 3071, was immaterial where the parties sought to be bound by the compromise agreement were held to have ratified same. ■
In Gallioto v. Trapani, 238 La. 625, 116 So.2d 273 (1959), the Louisiana Supreme Court applied the doctrine of ratification of an alleged unauthorized contract by an agent, summarizing the law in this regard as follows:
“On the subject of ratification of an agent’s acts we stated as follows in Succession of Gilmore, 154 La. 105, 97 So. 330, 331:
‘An unauthorized contract of an agent is ratified by the principal, who, when notified of such contract, does not immediately repudiate it, but accepts the benefit arising under such contract. Ward v. Warfield, 3 La.Ann. 468; Flower v. Downs, 6 La.Ann. [538] 540; Szymanski v. Plassan, 20 La.Ann. [90] 92, 96 Am.Dec. 382; Mangum v. Bell, 20 La.Ann. 215; R.C.C. Art. 3010.’
See also Fred G. Jones & Co. v. Sanford, 163 La. 799, 112 So. 726; and Andrus v. Eunice Band Mill Co., 190 La. 141, 182 So. 127.” (Gallioto v. Trapani, 116 So.2d at 276)
We are satisfied from our review of the record that the trial judge committed no manifest error in finding and concluding that defendant Bagwell ratified the signing by Mrs. Caruso of his name to the surety agreement, thus justifying imposition of liability upon Bagwell to plaintiff.
The judgment appealed from is, accordingly, affirmed, with all costs of this appeal assessed to appellant.
Affirmed.

. Louisiana Code of Civil Procedure Article 1428(3) (d) provides the following:
“At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the rules of evidence, may be used against any party who was present or represented at tlie taking of the deposition or who had due notice thereof, in accordance with any one of the following provisions:
* * * * *
“(3) The deposition of a witness, whether or not a party, may be used by *324 any party for any purpose if the court finds: * * * (d) that the party offering the deposition has been unable to procure the attendance of the witness by subpoena. * * * ”

. The body of the letter written to defendant Bagwell reads as follows:
“Attached is copy of letter we have written to the agency suspending all their agency powers to bind and write policies.
“Our May premium balance was not remitted in time called for by the Contract and remains unpaid. We are notifying you as personal indemnitor un. der the Contract, and as Secretary-Treasurer of the agency corporation.” (Plaintiff Exhibit No. 9-C)

. The body of the October 28, 1968, letter addressed to defendant Bagwell reads as follows:
“Enclosed you will find copy of the letter I have written to the Caruso-Simoneaux Agency, Inc., which is self-explanatory.
“As an Indemnitor of the agency for our balances, we hereby make demand on you personally for payment of our account, and as indicated therein, unless we do receive payment promptly and without further delay we notify you too that our file will be turned over to our attorney not later than Thursday, October 31st, 1968, for immediate legal action.” (Plaintiff Exhibit No. 8-D)