BLANCHE, Judge.
Plaintiff-appellee, Johnny Upton, hereinafter referred to as Upton, was a licensed real estate salesman employed pursuant to an oral contract, by the appellant, Better Homes Realty, Inc., hereinafter referred to as Better Homes, a licensed real estate broker. Upton sued Better Homes and Robert E. McDowell, a contractor and stockholder of the corporation, for a real estate commission allegedly due. The Nineteenth Judicial District Court rendered judgment in plaintiff’s favor for the sum of $1,180.00 plus legal interest from date of judicial demand and all costs of court. Judgment was further rendered in favor of Robert E. McDowell, individually, dismissing him from the litigation. Better Homes appealed the award to Upton, but no appeal was taken from the dismissal of McDowell. We Affirm.
Early in March, 1973, Upton, as part of his duties, was holding an “Open House” promotion for Better Homes. Mr. and Mrs. Herman E. Crotwell, Jr., attended the Open House and were interested in the type of house being displayed. However, they were not interested in buying that particular house but were interested in having a similar house built upon land which they already owned in Walker, Louisiana. Upton then arranged a meeting among himself, the Crotwells, and Robert E. McDowell, the contractor who builds homes for Better Homes. Some preliminary sketches were made by McDowell and presented to the Crotwells. These sketches were unacceptable and suggestions were made for changes. Thereafter, another meeting was held and further plans were shown. At this particular meeting Upton *148 was asked to leave the room by the Crot-wells. They then privately conveyed their wishes to McDowell that Upton should receive no commission on a residence built for them by McDowell. From that point forward, Upton’s name was never mentioned in the subsequent negotiations and building of the home.
McDowell’s position should be clarified. He was one of the four principal stockholders of Better Homes Realty, Inc., was a builder, and was active in the management and affairs of Better Homes. It was conceded that, for the purposes of this litigation, McDowell and Better Homes were one and the same. Upton’s position was that of real estate salesman for Better Homes. His function was to find buyers for property listed by the company and also to find people interested in having a home built by Better Homes. For his services, he, like the other salesmen for Better Homes, received a 2i/£ percent commission, based upon the selling price of the house.
Upton’s contention is that McDowell told him he would receive his commission even though he was asked to step aside by the Crotwells. At the trial McDowell, when questioned, could not recall telling this to Upton. However, his memory was refreshed with interrogatories and he had to concede he evidently did tell Upton that his commission would be protected but did add that it was done with the understanding that a normal commission would be paid only if an agreement was reached on the particular proposal submitted by Upton, and no such agreement was reached on that proposal.
On March 30, 1973, approximately one month after Upton’s initial contact with the Crotwells, Upton left the employment of Better Homes because he had procured his own broker’s license, and McDowell alone completed the negotiations with the Crotwells, with no further help from Upton. The record reflects that the standard procedure when Better Homes is the builder, is for McDowell to take over from the salesman because the salesmen are not familiar with construction costs and procedures. The salesman would then take on a lesser role and help McDowell wherever he need help, such as to help with selection of draperies, rugs, colors, et cetera. Final duties of the salesman consisted of his assistance with the closing when the house was finished.
Subsequent to Upton’s departure, the final agreement to build was reached on May 17, 1973, approximately three months after the initial contact. At one point during the three-month period, negotiations were broken off for approximately six weeks, but the final agreement was eventually reached, and McDowell built the house for cost plus a builder’s fee of $4,000.00. The original proposal by Upton was that the house be built for a set figure, so there was no similarity between the agreement as presented by Upton and the final agreement agreed to by McDowell and the Crot-wells.
After the completion of the Crotwell residence, Upton wrote Better Homes asking for his commission. Better Homes felt a commission was due Upton, but upon McDowell’s recommendation the full 2i/^ percent would not be paid since Upton had not taken part in all the negotiations and finalization and likewise because McDowell felt his profit margin was very thin because of the fee arrangement finally agreed upon. McDowell in consideration of these factors, recommended Better Homes tender Upton a $1,000.00 commission, which was $180.00 less than the normal 2Y2 percent figure. The testimony established that Better Homes did have some leeway in awarding commissions to its salesmen based upon factors such as these.
Upton considered that he was due the full 21/2 percent and upon advice of his counsel refused to accept the lesser .amount. Upon learning of this, Better Homes consulted their counsel, who felt no *149 commission was due at all, and furthermore, that it would be unlawful to pay such a commission in view of the law regulating the payment of commissions to real estate salesmen since Upton was no longer employed by Better Homes. Upon counsel’s advice, Better Homes stopped payment of Upton’s check and Upton thereafter sued for the entire percent commission.
Defendant, Better Homes, points out the law holding that a real estate broker is entitled to his commission when he is the “procuring cause” of the sale. He also relies on case law to conclude that a real estate “salesman”, in contrast to the broker, cannot earn a commission from his broker by merely being a “procuring cause” of the sale but must additionally obtain a sale (a signed agreement to buy and sell) at a time when he was a licensed real estate salesman in the broker’s employ. He then argues that plaintiff is not entitled to a commission because he did not make the sale, that the sale was made after he left defendant’s employ as a licensed real estate salesman and that to pay him a commission under these circumstances would be in violation of LSA-R.S. 37:1451[1] which prohibits such payment.
In our opinion Chapter 17 entitled Real Estate and Business Brokers, which defines “Real Estate Brokers,” “Real Estate Salesmen” and the conditions under which real estate salesmen are paid have no application to this transaction before this Court.
Section 1431 defines real estate brokers and salesmen as follows:
“(3) ‘Real estate broker’ means any person who, for a compensation or valuable consideration sells or offers for sale, buys or offers to buy, or negotiates the purchase or sale or exchange of real estate, or who leases or offers to lease, or rents or offers for rent, any real estate or the improvements thereon for others, as a vocation.
“(4) ‘Real estate salesman’ means any person who for a compensation or valuable consideration is employed either directly or indirectly by a licensed real estate broker to sell or offer to sell, or buy or offer to buy] or to negotiate the purchase or sale or exchange of real estate, or to lease or offer to lease, rent or offer for rent any real estate for others as a whole or partial vocation.”
Inasmuch as Section 1451 deals with payment of real estate salesmen, we must determine where Better Homes and Upton fall within the definition of broker and salesman in Section 1431. The first criteria is that the transaction between Better Homes and the Crotwells must have been a sale. The case of Wurst v. Pruyn, 250 La. 1109, 202 So.2d 268 (1967), conclusively established that the type of transaction wherein a landowner negotiates with a builder for the erection of a residence does not result in a vendor-vendee relationship, /but is, rather, a construction contract. With no vendor-vendee relationship, there is no sale. See, also, Broussard v. Pierret, 215 So.2d 136 (La.App.3rd Cir. 1968), and Parker v. Brown, 150 So.2d 306 (La. App.2nd Cir. 1963).
In Wurst, supra, the Court examined the contract existing between the parties and determined that it was a construction contract rather than a sale. In examining the instant contract, we notice on the title that the same is designated as a “Builder’s Contract,” wherein the contractor (Better Homes) agreed to build the residence upon the Crotwell’s lots. Better Homes also described itself in the agreement as a “builder.” Because we conclude, as was concluded in the Wurst case in considering a similar contract, that this is a construction contract rather than a sale, the statutory defi *150 nitions of “real estate broker” and “real estate salesman” cannot apply.
The next criteria is that a broker is an intermediary and becomes the agent of both parties in a real estate transaction. Gallioto v. Trapani, 238 La. 625, 116 So.2d 273 (1959); Martin v. Fontenot, 27 So.2d 457 (La.App. 1st Cir. 1946); Treadway v. Piaz, 156 So.2d 328 (La.App. 4th Cir. 1963). In the instant case neither a brokerage agreement nor a real estate transaction was contemplated. The agreement between the Crotwells and Better Homes related solely to the construction of a home on lands already owned by the Crotwells. There was no third party to the agreement and Better Homes could not have acted as an intermediary. In summation, we believe the evidence supports plaintiff’s contention that defendant agreed to pay him a fee for finding the party for whom Better Homes could negotiate with for the construction of a home and that Chapter 17 governing the regulation of real estate transactions has no application to the case.
Finding that Section 1451 does not apply to the transaction upon which this suit was brought, we next determine if an award is supported by the evidence. It was customary for Better Homes to pay their salesmen a 2i/¿ percent commission on such transactions. McDowell admitted he told plaintiff that even though the Crot-wells wanted him to step aside, he would still receive his commission. Better Homes’ salesmen performed only minor activities after initial contact. Notwithstanding the fact that Upton stepped completely out of negotiations, Better Homes actually tendered a $1,000.00 commission to him, thus establishing that both Better Homes and McDowell considered Upton’s commission had been earned.
We find no evidence justifying the reduction in the fee from $1,180.00 to $1,000.00 which was tendered by Better Homes and affirm the holding of the trial court that the entire 2i^ percent was due.
For the foregoing reasons, the judgment of the trial court is affirmed, at the cost of appellant.
Affirmed.

. LSA-R.S. 37:1451 provides:
“No real estate salesman shall accept a commission of valuable consideration for the performance of any act herein specified from any person, except his employer who is a licensed ' real estate broker.